[PHILADELPHIA, MARCH 27, 1829.]

Rawle.
1 r 227
137 334

METZGAR, for the use of UHLER and another, *against* METZGAR.

IN ERROR.

The assignee of the assignee of a bond, takes it subject to all the equities existing at the time of the assignment, between the obligor and the first assignee, notwithstanding such equities may have arisen before the bond came into the hands of the first assignee.

A judgment may be set off before a jury, against a demand not ascertained by judgment.

THIS was a writ of error to the Court of Common Pleas of *Northampton* county, which was returned accompanied by several bills of exceptions to the opinion of a majority of the court below, both in the admission of evidence, and in their instructions to the jury.

The action was brought in the name of *Christian Metzgar,* assignee of the executors of *Andrew Metzgar,* deceased, for the use of *Valentine Uhler* and *Henry Uhler,* against *Philip Metzgar,* upon a bond given by *Philip Metzgar* to *Andrew Metzgar,* dated the 26th of *May,* 1810, in the penalty of one hundred pounds, conditioned for the payment of fifty pounds on the 27th of *May,* 1825. This bond was, on the 8th of *December,* 1815, assigned by the executors of *Andrew Metzgar,* under seal and in the presence of two witnesses, to *Christian Metzgar,* who, by an informal assignment

(Metzgar, for the use of Uhler and another, *v.* Metzgar.)

endorsed on the bond, transferred it on the 4th of *January*, 1816, to *Valentine Uhler* and *Henry Uhler.* ·

The defendant pleaded payment, with leave to give the special matters in evidence; to which he afterwards added the plea of set-off.

On the trial the defendant, under notice previously given, offered in evidence the record of a judgment for ninety-nine dollars forty-three cents, confessed before *Frederick Heany*, Esq., a justice of the peace, by *Christian Metzgar*, in favour of *Philip Metzgar*, on the 26th of *August*, 1809. To the admission of this evidence the counsel for the plaintiffs objected; upon which the President of the court requested the counsel for the defendant, to prove any circumstances which had a tendency to create a presumption of fraud in the assignment of the bond in question by *Christian Metzgar* to *Valentine* and *Henry Uhler.* This the counsel for the defendant declined doing. The President then delivered his opinion against the admission of the evidence; but the two associates overruled him, and permitted it to be given; upon which an exception was taken by the plaintiffs' counsel to their opinion.

The defendant's counsel, in further pursuance of the notice given, offered in evidence a single bill given by *Christian Metzgar* to *Philip Metzgar*, for thirty-three dollars and forty cents, dated the 26th of *August*, 1809, and payable on the 29th of the same month, on which judgment was confessed before *Daniel Brown*, Esq., a justice of the peace. They also offered in evidence another single bill given by *Christian* to *Philip Metzgar*, for twenty-eight pounds, six shillings, and one penny, dated the 8th of *May*, 1813, and payable on the 27th of *May*, 1814. This evidence being objected to by the plaintiffs' counsel, the President gave his opinion in favour of maintaining the objection; but the associates again overruled him, and admitted the evidence; which formed the basis of three additional bills of exceptions, tendered by the counsel for the plaintiffs.

After the President had charged the jury upon the facts, he proceeded to give his opinion upon eight legal propositions submitted by the counsel for the plaintiffs, all of them involving the same principles upon which the questions of evidence had been decided; viz. whether or not the matters given in evidence, were a good defence against the plaintiffs' demand. Upon all these points the opinion of the President was in favour of the plaintiffs, but the associates differed from him on every point, and delivered their opinions to the jury, in accordance with which they found a verdict.

The counsel for the plaintiffs excepted also to the charge of the court.

*Brooke* and *J. M. Porter*, for the plaintiff in error.

1. The first question is, whether a judgment can be set off against a debt in suit? Judgments are not within the statutes of set-off. 1 *Am. Dig.* 344, *Set-Off*, pl. 2. Our defalcation act, (*Purd. Dig.* 177,) allows a set-off, in cases where two or more dealing to-

(Metzgar, for the use of Uhler and another, *v.* Metzgar.)

gether, are indebted to each other, upon bonds, bills, bargains, promises, accounts, or the like; but the enumeration does not embrace judgments. In *England,* though not within the statutes, judgments may be set off against each other, on motion, under the equitable powers of the court. *Montague,* 6. This may be done with perfect justice to the parties; but where the plaintiff is obliged to bring suit for the purpose of ascertaining a disputed claim, it would be manifestly unjust to permit the defendant to set off a judgment against it, and thus throw the costs on the plaintiff.

2. The second question is, whether or not an obligor can set off against a second assignee, a debt due to him by the first assignee, before the execution of the bond? The doctrine of set-off has only been adjudged to affect the assignee of the obligee, on the ground that the obligor has become the creditor of the obligee, on the faith of the instrument. It has never been held that the obligor could set off a debt against the assignee of an assignee, unless, perhaps, during the time the first assignee held the bond, the obligor, on the faith of it, became his creditor. The leading cases in our own books, are of the defalcation of debts due by the obligee to the obligor. The decision in *Wheeler* v. *Hughes,* 1 *Dall.* 23, was, that the assignee takes the bond subject to all the equity the obligor has against the obligee. The principle the court has gone upon is, to be liberal as to the subject matter of the set-off, but strict as to the persons between whom it is to take place; and an unwillingness has latterly been shown to extend the doctrine further than it has already gone. It has been truly said, that a set-off against an assignee does not rest on equity or good policy. Where the debt has been incurred by the first assignee, not only before the bond came into his hands, but even before its execution, no injustice can be done to the obligor by refusing to let him set it off after the assignment, because the inception of the debt had no reference to the bond; but to permit such a set-off, would be highly inequitable to the innocent assignee, who has paid a valuable consideration for the bond, and had no notice of any pre-existing debts between the first assignee and the obligor. *Davis* v. *Barr,* 9 *Serg. & Rawle,* 141. *Bury* v. *Hartman,* 4 *Serg. & Rawle,* 177. *The Bank of Niagara* v. *M'Cracken,* 18 *Johns.* 493. *M'Collough* v. *Houston,* 1 *Dall.* 441. *Reeder* v. *Lewis,* 9 *Serg. & Rawle,* 195. *Calhoun* v. *Snyder,* 6 *Binn.* 135. The act of 1715, sect. 3, (*Purd. Dig.* 97,) declares that the assignee of a bond shall recover what is due at the time of the assignment, "in like manner as the person or persons to whom the same was made, payable might or could have done." *Valentine* and *Henry Uhler* were therefore entitled to recover whatever the executors of *Andrew Metzgar* could have claimed; and as the matters given in evidence could have had no operation in a suit brought by them upon the bond, it follows, that they cannot affect the instrument in the hands of the real plaintiffs in this suit.

(Metzgar, for the use of Uhler and another, *v.* Metzgar.)

*Scott,* for the defendant in error.—The position attempted to be maintained on the opposite side—that a judgment cannot be set off against a demand unascertained by judgment—is against sound reason, and even against common sense.   It would be extraordinary, indeed, if a man were permitted to set off an unascertained claim, and yet, as soon as it assumed a fixed and determinate character, be refused that privilege.  It is essential to the goodness of a set-off, that it should be ascertained.   Unliquidated damages in tort, which cannot be set off before judgment, may be set off after they are reduced to certainty by judgment.   There is direct authority in support of the position contended for on behalf of the defendants in error. 1 *Bac. Ab.* 137, *Set-off, C. Montague,* 10.

2.  The rule, that a purchaser for a valuable consideration shall be protected against secret trusts, is doubtless well established, but it is to be taken with this qualification, that he has not the means of notice of the existence of such trusts.   If he has notice, or the means of knowledge, of which he neglects to avail himself, he is bound. When, therefore, a man is about to receive an assignment of a bond, it is his business to call on the obligor, and inquire what claims he has upon the obligee, or any of the previous assignees; and, if he neglects this easy precaution, he ought to be the sufferer, and not the obligor, who was a stranger to the transfer.   Mutuality of credit has never been deemed an essential ingredient in the doctrine of set-off, but mutuality of remedy has.   The settled rule is, that the assignee of a bond takes it subject to all the equity existing against the obligee; and payment to the assignor, without notice of the assignment, is good against the assignee.   Notice puts an end to all privity between the assignor and obligor, and the assignee becomes the owner of the bond, subject to any existing equity against the obligee.  After notice of the assignment, a new contract arises between the obligor and the assignee, who holds a chose in action no more negotiable than it was in the hands of the obligee.   If he transfers it, he does so liable to all the equity arising from the contract between him and the obligor.   If this be not the case, the effect of an assignment would be to make the instrument negotiable.   The question is not, what equity there is between the obligor and obligee, but what equity there is in the obligor.   The fact that *Christian Metzgar* was indebted to *Philip Metzgar,* while the former held the bond, amounted to payment of it, and chancery would have decreed it to be given up. *Ryal* v. *Rowles,* 1 *Ves.* 367. *Cromwell* v. *Arrott,* 1 *Serg. & Rawle,* 184. 1 *Ves. jr.* 249. 2 *Wash.* 233, 254. 1 *Madd. Ch.* 126, 185, 186. *Cro. Eliz.* 14. 12 *Mod.* 422. 6 *Bac. Ab.* 453.

The opinion of the court was delivered by

Gibson, C. J.—Our defalcation act, having been found extremely beneficial in practice, has been construed more largely than the words would seem to bear.   Even the *English* statute, although more narrow in its words and construction, has not been held to require that the debts to be set against each other, should have

(Metzgar, for the use of Uhler and another, *v.* Metzgar.)

arisen out of the same transaction. The object is to promote convenience by preventing circuity of action; and that requires the defalcation of all demands which do not involve any great degree of intricacy in the inquiry. Why, then, should not the act embrace the debt of an intermediate assignee? The words certainly do not restrict the remedy to transactions between the original parties; and there are no equitable considerations to exempt the case of a subsequent assignee. At the time of the assignment, the right of defalcation existed in full force between the obligor and the intermediate assignee. By what right, then, can the latter put a subsequent assignee in a more advantageous situation than he held himself. In this state, no assignee, whether legal or equitable, can affect to be prejudiced by want of notice; it being his duty, as established by many decisions, to sound the obligor before he parts with his money, as to the amount actually due. With or without actual notice, therefore, he is precisely in the situation of the preceding obligor, whose title he bears.

Nor is there more force in the objection, that a judgment cannot be set off before a jury. Judgments are frequently set against each other by the court; and there is no colour of argument against defalcating them from unascertained demands. A judgment may be the foundation of an action; and there is no reason why it should not be set up as a cross demand, equally with a bond or recognisance. It would be unjust to subject to the costs of a trial, a defendant who has a judgment sufficient to extinguish the plaintiff's demand altogether. The *English* decisions incontrovertibly establish the right of set-off in similar cases; and, although not the point decided, it was taken for granted by this court in *Waln* v. *Hewes*, (5 *Serg. & Rawle,* 468.) On both grounds, then, the set-off was properly allowed. . Judgment affirmed.