MANUFACTURERS' FINANCE CORPORA-
TION v. VYE–NEILL CO. et al.

VYE–NEILL CO. et al. v. MANUFACTUR-
ERS' FINANCE CORPORATION.

Nos. 2744, 2745.

Circuit Court of Appeals, First Circuit.

Jan. 3, 1933.

Harrison J. Barrett, of Boston, Mass. (John A. Lyons and Barrett & Lyons, all·of Boston, Mass., on the brief), for Manufacturers' Finance Corporation.

Robert A. B. Cook, Marvin C. Taylor and Phipps, Durgin & Cook, all of Boston, Mass., for Vye-Neill Co. and others.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These are cross-appeals in an action brought by the Manufacturers' Finance Corporation, a New York corporation doing business in New York, against the Vye-Neill Company, a Massachusetts corporation, doing ·business in Massachusetts. The plaintiff's declaration contains two counts. The first ·count is based' on a draft, or trade acceptance, drawn by the Freed-Eiseman Radio Corporation, a New York corporation, hereinafter referred to as the Freed Corporation, and accepted by the Vye-Neill Company, and transferred by the Freed Corporation by indorsement to the Earl Radio Corporation, a New York corporation, and hereinafter referred to as the Earl Corporation, and by the Earl Corporation by delivery for value, and before maturity, to the plaintiff, which is alleged to be a holder in due course. In the second count the plaintiff seeks to recover as assignee of an account for goods sold and delivered by the Freed Corporation on November 18, 1929, to the defendant to the amount of $2,239; said account having been assigned by the Freed Corporation to the Earl Corporation, and by the Earl Corporation to the plaintiff.

The defendant filed an answer in which it denied that the plaintiff was a holder in due course of the trade acceptance, and also filed a declaration in set-off, under which it claimed a right of set-off, consisting of more than sixty items, both· against the trade acceptance and also against the account on which the second count was based, and alleging that the plaintiff accepted the trade acceptance and the assignment of the account with full knowledge of and subject to the defendant's right of "recoupment, counter claims and set-off" against the Freed Corporation under a certain contract between them, of which the plaintiff had knowledge.

The plaintiff's writ was dated April 17, 1930, and in pursuance thereof an attachment of the defendant's property was made on April 29, 1930. On June 4, 1930, the property was released from the·attachment by the defendant by filing a bond in the principal sum of $20,000, executed by the defendant as principal and by the Consolidated Indemnity & Insurance Company of New York as surety.

Within four months of the date of the attachment, or on August 7, 1930, a petition in bankruptcy was filed against the defendant, on which it was duly adjudicated a bankrupt. Subsequently a suggestion of·bankruptcy of the defendant was filed in the case. The defendant in this action then filed a motion for leave to plead its discharge, if and when granted, and requested that the case be continued pending its discharge.

The plaintiff in October, 1930, and before any discharge in bankruptcy had been granted to the defendant, filed a motion that the case stand for trial and judgment, with a perpetual stay of execution in case of the discharge of the defendant in bankruptcy, to enable the plaintiff to proceed against the surety on the bond to release the attachment.

The defendant's motion was denied and the plaintiff's granted (D. C.) 46 F.(2d) 146. Exceptions were taken by the defendant and allowed, and whether the method of procedure adopted by the District Court can be sustained is one of the questions raised under the defendant's assignment of errors.

Before going to trial, the defendant's trustee in bankruptcy was joined, but, as none of the property of the bankrupt's estate is involved in this action, it does not appear that the trustee established any interest in the outcome of the action, and the effect of his joinder need not be·considered.

The case was then referred to an auditor, who was directed to find the facts. By agreement of the parties, his findings of fact are to be considered as final. As not all the evidence is reported, and a motion for recommitment was denied, the auditor's findings of fact must stand, except in so far as they may involve a question of law, and his conclusion is contrary to law.

Protracted hearings were held by the auditor, who filed a detailed report of his findings. In substance, the auditor found that the plaintiff was a holder in due course of the trade acceptance and entitled to judgment on the first count for the face of the draft and interest amounting to $16,654.36; that the plaintiff was entitled to recover the amount of the invoice under the second count of $2,239 with interest or a total of both counts of $19,154.95; that the defendant under its declaration in set-off, if entitled to recover anything in set-off, was entitled to recover the amount of $15,792.42, with interest from the date of the writ of $1,458.17, or a total of $17,250.59; whereupon the auditor reported that there was a balance due the Manufacturers' Finance Corporation of $1,-904.36.

On the coming in of the auditor's report, the plaintiff moved that it be recommitted, and the defendant moved that it be confirmed, and that judgment be entered for the plaintiff for the sum of $1,904.36.

The plaintiff's motion to recommit the auditor's report was denied. The District Court held, upon the facts found by the auditor, that the plaintiff was a holder in due course of the trade acceptance and was entitled to judgment on the first count for the amount of the trade acceptance with interest from December 15, 1929, but, without determining whether the auditor's findings as to each of the separate items of set-off were correct, held that the plaintiff could not recover on the second count. The inference is that the court held under section 11 of chapter 232 of Mass. G. L. that as against the plaintiff counter-claims against the Freed Corporation were allowable only to the amount of the plaintiff's claim, and found that the total items properly allowed by the auditor in set-off at least equalled the amount of the account sued on in the second count, with interest from the date of demand of payment.

Both plaintiff and defendant filed many assignments of errors. The assignments relied on by both parties, however, may be considered under four heads:

(1) Did the bankruptcy of the defendant within four months of the date of the attachment on the plaintiff's writ and its discharge release the surety as well as the defendant from liability under the bond, and did the District Court err in permitting the plaintiff to proceed to judgment against the principal in order to fix the liability against the surety?

(2) Is the plaintiff a holder in due course of the trade acceptance?

(3) If the plaintiff is not a holder in due course, is the defendant entitled to a right of set-off against the trade acceptance in the hands of the plaintiff; if so, to what amount?

(4) Is the defendant entitled to a set-off against the plaintiff under the second count; and, if the defendant has a right of set-off against the plaintiff for more than the amount due under count 2, is the defendant entitled to a judgment for the difference and to have such judgment set off against the plaintiff's judgment on the first count, as reported by the auditor?

The plaintiff's assignment of error on the ground that the District Court refused to recommit the report requires no extended consideration. Counsel for plaintiff admits that it would not be feasible—the auditor having since died—to refer the case to another auditor. Besides, the report of the former auditor was very full and complete, and contains all the facts essential to a determination of the case.

We think the ruling by Judge Brewster was right, viz. that a bond given to discharge an attachment, the condition of which is to pay the amount which the plaintiff shall recover on his writ or any special judgment which may be entered in said action, is in the nature of an independent contract, the effect of which is to discharge the lien on the goods resulting from the attachment. In this respect it differs from a "forthcoming bond," the condition of which is to restore the property in case of judgment. In the former case both the Massachusetts court and the federal courts hold that a discharge in bankruptcy does not discharge a surety, while in the latter case it does. While there is some difference of opinion, the rule in Massachusetts seems to be sustained by the greater weight of authority. Guaranty Security Corporation v. Oppenheimer et al., 243 Mass. 324, 137 N. E. 644; H. F. Livermore Co. v. Fidelity & Casualty Company of New York, 259 Mass. 419, 156 N. E. 674; Woogmaster v. National Surety Company, 260 Mass. 184,

157 N. E. 44; In re Federal Biscuit Co. (C. C. A.) 214 F. 221, 223; Brown v. Four-In-One-Coal Co. (C. C. A.) 286 F. 512; In re Rosenstein (C. C. A.) 276 F. 704; In re Maaget (C. C. A.) 179 F. 1019; Fidelity & Dep. Co. of Maryland v. Shepherd, 56 App. D. C. 117, 11 F.(2d) 563; Pullman Met. Spec. Co., Inc., v. Lang, 101 Conn. 26, 124 A. 824; Dunham Bros. Co. v. Colp, 125 Me. 211, 132 A. 388; Goodwin & Sigel v. Boston Clothing Co., 47 R. I. 25, 129 A. 611; Andrews v. Jones, 46 R. I. 141, 125 A. 356, 36 A. L. R. 447, note pages 449–451.

Where no property of the bankrupt is pledged to indemnify the surety against loss, the giving of such a bond is in the interest of the creditors of the bankrupt. If a surety assumes the obligation to pay the judgment without any security, we think the cases holding the surety liable, in case judgment is obtained against the bankrupt, are based on sound reasoning.

■ The procedure followed by Judge Brewster of permitting the case to go forward to judgment, prior to a discharge being granted, in order to fix the liability of the surety in such cases, is also well supported by authority. In no other way can the bond be enforced except by a special judgment with perpetual stay of execution upon the filing of a discharge in bankruptcy. Such procedure may also be necessary to reduce to judgment unliquidated claims, in order that the plaintiff, or an indemnifying surety, may prove the claim in bankruptcy. It makes no difference whether a bond to pay a judgment was given prior to or within four months of the filing of the petition in bankruptcy, since no injury results to the bankrupt's creditors.

The release of an attachment on a bankrupt's property within four months of the filing of a petition in bankruptcy by giving a bond does not deprive the other creditors of any share in the bankrupt's estate; and, unless collusion or fraud is shown, or the bankrupt turns over property to the surety to protect it in case it is called on to satisfy a judgment obtained by the attaching creditor, of which there is no proof in this case, creditors of a bankrupt have no ground of complaint.

The following cases support the course followed by Judge Brewster: Berry Clothing Co. v. Shopnick, 249 Mass. 459, 144 N. E. 392; Barry v. N. Y. Holding & Cons. Co., 229 Mass. 308, 118 N. E. 639; Smith v. Miller, 226 Mass. 187, 115 N. E. 243; Rosenthal v. Nove, 175 Mass. 559, 563, 56 N. E. 884, 78 Am. St. Rep. 512; Feigenspan v. McDonnell, 201 Mass. 341, 346, 87 N. E. 624; Hill v. Harding, 130 U. S. 699, 730, 9 S. Ct. 725, 32 L. Ed. 1083; In re Marshall Paper Co. (C. C. A.) 102 F. 872, 874; Brown v. Four-In-One-Coal Co., supra, page 515 of 286 F.; In re J. L. Philips & Co. (D. C.) 224 F. 628.

■ The more doubtful issue in this case is, whether the plaintiff is a holder in due course of the trade acceptance. According to the face of the draft, it was drawn in Boston, accepted there, and was payable there. Although it appears as a fact that it was executed by the Freed Corporation in New York, it was accepted and payable in Boston, and the rights of the parties are governed by the Negotiable Instrument Law of Massachusetts (G. L. Mass. c. 107, § 23 et seq.), unless the provisions of that act are contrary to principles generally recognized by the federal courts.

A holder in due course under the Massachusetts act (section 75) is defined as one who takes the negotiable instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

Both the auditor and the District Court (Judge Lowell sitting) found that all of these conditions were complied with as to the trade acceptance involved in this case. The defendant does not claim that the first two conditions were not complied with, or the third, if the plaintiff accepted the draft other than for the purpose of collection.

■■ There was nothing on the face of the draft to indicate any infirmity or lack of title in either the Freed Corporation or the Earl Corporation. G. L. Mass. ch. 107, § 79. A person taking a negotiable instrument regular on its face and before maturity, is presumed to be a holder in due course. The defendant contends, however, that the plaintiff, when it took the trade acceptance, knew of the defendant's contract as a so-called distributor between the Freed Corporation and the defendant, and was fully cognizant of its terms, and that under it the Vye-Neill Company might be entitled to deductions from invoices of merchandise sold to it by the Freed Corporation on several grounds.

We think that the findings of the auditor and the District Court that the plaintiff was a holder in due course should be sustained.

The accounts assigned to the plaintiff were collected by the Freed Corporation, but trade acceptances might be collected by the plaintiff through the customary channels. Under the contract to finance the Earl Corporation, which controlled the Freed Corporation, whenever remittances were made by any of the distributors of the Freed Corporation in settlement of any of the accounts assigned to the plaintiff, whether in the form of cash or notes, checks, or drafts, such remittances were to be immediately delivered to, and accepted by, the plaintiff at par, and, if in the form of cash, applied at once on the proper accounts; but, if in the form of a check or trade acceptance, it withheld the application as a bookkeeping entry until paid. As a result of this method of financing, a distributor, such as the defendant, might never know that its accounts with Freed Corporation were assigned at all, or its trade acceptances were negotiated with third parties, since the latter might be collected by any of the ordinary methods through banks. In fact, the defendant did not know of the contract between the Earl Corporation and the plaintiff, and that its account for the merchandise purchased on November 18, 1929, was assigned to the plaintiff, or that its trade acceptance of November 15 was in the hands of the plaintiff, until, after receivers had been appointed for the Earl Corporation and the Freed Corporation, it was notified by the plaintiff, on or about December 4, 1929, and that the account was assigned to it.

The trade acceptance given on November 15 to the Freed Corporation was given in settlement of certain invoices of merchandise delivered on October 4 and October 16, 1929, and was indorsed and forwarded to the plaintiff as a settlement of these invoices. It was not credited on the plaintiff's books to the account of the Earl Corporation, since under its contract with the Earl Corporation, if accounts or trade acceptances were not paid when due, additional invoices were assigned to it by the Earl Corporation to cover the resulting deficit, or the deficit was charged to a reserve account established under its contract with the Earl Corporation to protect the plaintiff against bad accounts.

Under its contract with the Earl Corporation, the plaintiff agreed to "accept at par subject to payment" all remittances received through the Earl Corporation to be applied on any account purchased by the plaintiff of the Earl Corporation. When the plaintiff accepted any remittance in the form of a check, note, or draft, we think it became its absolute property to be applied in accordance with its contract with the Earl Corporation, if and when paid. When the trade acceptance here involved was received by the Earl Corporation in payment of certain invoices of merchandise sold to the defendant by the Freed Corporation, Fratta v. Rossetti, 277 Mass. 98, 177 N. E. 890, all deductions to which the defendant was entitled presumably had been made.

The cases holding that a bank which takes negotiable instruments for collection or with the understanding that, if not paid when due, they may be charged to the depositor's account, are in accordance with well-established banking practice, but do not apply to the plaintiff. The plaintiff was not doing a banking business by accepting notes and drafts merely for collection. Its business is described in the contract between it and the Earl Corporation as furnishing "service" to aid manufacturing and distributing companies, particularly of radio and radio supplies, by purchasing accounts, notes, drafts, acceptances, and evidences of sale of personal property dealt in by the jobber or distributor, and advancing to the manufacturer on delivery a certain percentage of the face value of such accounts, and the balance when paid.

Its relations with the Earl Corporation were fixed by the contract; and when in good faith, without notice of any infirmity, it accepted notes and drafts from the Earl Corporation as remittances in place of cash, it took them with all the rights of a holder in due course, including the right, in case of nonpayment, that every holder of a negotiable instrument has, of looking to an indorser or guarantor, which the Earl Corporation in effect was under its contract with the plaintiff, or at its option holding the drawee or maker. Beacon Trust Co. v. Ryder, 273 Mass. 573, 576, 174 N. E. 725.

The fact that the plaintiff was familiar with the terms of the contract between the Freed Corporation and its distributors, under which the distributors might be entitled to certain deductions from the face value of their invoices, does not entitle the defendant to set off such deductions against this plaintiff, of which the plaintiff had no notice at the time of the transfer and acceptance of the trade acceptance.

The auditor found that, when the trade acceptance was transferred to the plaintiff on November 15, deductions had already been

made against the invoices of October 4 and October 16, and agreed to by the Freed Corporation, to an amount of over $6,000; and the trade acceptance for $14,967.97 was given and accepted by the Freed Corporation in settlement of the balance, and was transferred to the plaintiff upon this understanding. Knowledge that deductions on certain grounds were permitted as between the defendant and the Freed Corporation is not notice to the plaintiff, under the circumstances, that the October invoices, when the trade acceptance was transferred, were subject to still further deductions. Commercial Credit Co. v. M. McDonough Co., 238 Mass. 73, 79, 130 N. E. 179. The defendant must have known when the trade acceptance was forwarded to the Freed Corporation that it might be transferred to innocent third parties.

■ The plaintiff being a holder in due course, no right of set-off as between the defendant and the Freed Corporation is available as against the plaintiff, and the plaintiff is entitled to recover under the first count the face of the trade acceptance with interest.

■ Even though the plaintiff was not a holder in due course, if the trade acceptance was taken in good faith and for value, by the weight of authority, however it may be under the code of some states, only equities in connection with the transaction for which the trade acceptance was given are available to the maker. While the Massachusetts act, chapter 107, § 81, provides that a nonnegotiable instrument is subject to all defenses by the maker, a counterclaim or set-off is not a defense as that term is ordinarily used. Harrisburg Trust Co. v. Shufeldt (C. C. A.) 87 F. 669, 671; Chandler v. Drew, 6 N. H. 469, 26 Am. Dec. 704; 2 Daniel, Neg. Ins. 1435a. It admits the plaintiff's claim, and seeks to recover a claim due the defendant. Worden v. Gillett et al. (D. C.) 275 F. 654; Simpson v. Hall, 47 Conn. 417; Stedman v. Jillson, 10 Conn. 55; Hunleth v. Leahy, 146 Mo. 408, 48 S. W. 459; Leavitt v. Peabody, 62 N. H. 185; Cumberland Bank v. Hann, 18 N. J. Law, 222; Young v. Shriner, 80 Pa. 463; Hughes v. Large, 2 Pa. 103; Trafford v. Hall, 7 R. I. 104, 82 Am. Dec. 589; Haley v. Congdon, 56 Vt. 65; Polk v. Stewart, 144 Ga. 335, 337, 87 S. W. 21.

The defendant has not shown that it has any equities against the Freed Corporation available in defense of the trade acceptance held by the plaintiff. 8 C. J. 687, p. 479. The auditor found the trade acceptance to be a valid obligation, and we find no merit in the defendant's contention that the trade acceptance was not duly executed and recognized by the defendant as a valid obligation.

On November 18, 1929, after the giving of the trade acceptance, the defendant purchased another lot of merchandise of the Freed Corporation amounting to $2,239. The invoice for this merchandise, according to the arrangement between the Freed Corporation and the Earl Corporation and the plaintiff, was assigned to the Earl Corporation by the Freed Corporation, and by the Earl Corporation to the plaintiff.

On December 4 notice of an assignment of this invoice of November 18 was sent to the defendant, which immediately replied that it had deductions in set-off against the Freed Corporation, and had also stopped payment of the draft given on November 15, which was due on December 15. There is no contention that the defendant is not entitled to a right of set-off against this claim. The only issue is as to the amount and whether, if in excess of the account, the defendant is entitled to have the excess offset against the trade acceptance.

The defendant, under its declaration in set-off, claims it is entitled to deductions as between it and the Freed Corporation of sixty-seven separate items totalling approximately $20,000.

The auditor found that, under the declaration in set-off, the defendant was entitled to set-offs against the claim of the plaintiff under the second count in the sum of $17,-250.59, which included certain items claimed by the Vye-Neill Company of Worcester, a subsidiary or branch of the defendant corporation, and that there was a balance due the plaintiff in this action of $1,904.36. We need not determine whether the items in favor of the Vye-Neill Company of Worcester were properly allowed in favor of the defendant in this action, or whether every item allowed by the auditor was a proper item of set-off under section 1 of chapter 232 of the Massachusetts Statutes.

■ The District Court evidently rightly held that, while the defendant's claims against the Freed Corporation under its declaration in set-off was a good defense under the second count, to the amount of the plaintiff's claim, it was not good as a basis for judgment against an assignee of the Freed Corporation under section 11 of chapter 232, G. L. Mass., which provides that: "If, on the set-off in an action upon a claim assigned to

the plaintiff before action is brought, a balance is found due to the defendant, or if a balance is found due from any person other than the plaintiff, judgment shall not be rendered against the plaintiff for the balance."

The plaintiff, however, contends that the auditor erred in allowing the items claimed in set-off, since they did not comply with section 1 of chapter 232, G. L. Mass., in relation to set-offs, as they were not due upon a "judgment or upon a contract, express or implied for property sold, for money paid, for money had and received, or for services performed," and that, in order to be proper matter for set-off, the amounts claimed must be comprised in one of the classes enumerated, and also be for a liquidated sum, or an amount which can be ascertained by calculation.

Section 1 of chapter 232 reads as follows: "If at the commencement of an action upon a judgment or upon a contract, express or implied, for property sold, for money paid, for money had and received, for services performed and for an amount which is liquidated or may be ascertained by calculation, the defendant has in his own right a claim against the plaintiff such as is hereinbefore mentioned or such a claim which has been assigned to him with notice thereof to the plaintiff, it may be set off against the plaintiff's claim as hereinafter provided."

A history of the enactment of this section discloses that the original statute of 1784 limited set-offs to claims "for goods delivered, moneys paid or services done." In the revision of 1834, it appears in the following form: "No demand shall be set off unless it is for the price of real or personal estate sold, or for money paid, money had and received, or for services done, or unless it is for a sum that is liquidated, or one that may be ascertained by calculation."

The Massachusetts court in Blackler v. Boott, 114 Mass. 24, following the revision of 1834, held that the addition of the provision, "or unless it is for a sum that is liquidated, or one that may be ascertained by calculation," created a new class of claims available

in set-off, and in support of its interpretation referred to the notes of the commissioners on revision of the statutes to the effect that such was the purpose of the change. Since that time there have been two revisions of the Massachusetts Statutes, in 1860 and 1882, without any change in this section. In 1902 (Rev. Laws 1902, c. 174, § 1) the statute was changed to its present form, but without any suggestion by the commission on revision either in 1902 or in connection with the revision in 1921 that the substitution of "and" for "or" was done for the purpose of changing the effect of the statute, nor has the interpretation given in Blackler v. Boott, supra, since been questioned so far as we are advised.

The plaintiff further contends that, even so, many, if not most, of the claims contained in the defendant's declaration in set-off are not liquidated, or the amounts thereof cannot be ascertained by calculation, but are still subject to adjustment between the defendant and the receiver of the Freed Corporation. Admitting that this may be true in part, we think, without discussing each separate item, as the District Court evidently found, there are sufficient items in the declaration in set-off which had been agreed to, or were readily ascertainable by calculation, to offset any judgment to which the plaintiff was entitled on the second count. If there were more allowable claims than were sufficient to offset the assigned invoice of November 18, 1929, it is of no consequence as to how large a claim in set-off the defendant had against the Freed Corporation, as under section 11 of chapter 232 of the Massachusetts Statutes regulating set-offs, no judgment can be had against the plaintiff for any balance due the defendant from the Freed Corporation. Sargent v. Southgate, 5 Pick. (Mass.) 312, 318, 16 Am. Dec. 409; Boyd v. Gore, 143 Wis. 531, 128 N. W. 68, 21 Ann. Cas. 1263; Pabst Brewing Co. v. Lueders, 107 Mich. 41, 64 N. W. 872; Webb v. Michener, 32 Minn. 48, 19 N. W. 82; Small v. Kennedy, 137 Ind. 299, 33 N. E. 674, 19 L. R. A. 337; 24 R. C. L. 884; 57 C. J. 524, § 193.

The judgment of the District Court is affirmed without costs.