In re TRAFFIC SAFETY COMPANY, INC., Bankrupt.

Leonard P. GOLDBERGER, Trustee, Plaintiff,

v.

SIMCO, INC., a/k/a Simco Mfg. Co., Inc., a corporation, Defendant.

Bankruptcy No. 78–507G.

United States Bankruptcy Court, E. D. Pennsylvania.

April 28, 1981.

Leonard P. Goldberger, Philadelphia, Pa., trustee/plaintiff.

Donald M. Harrison, Fellheimer, Krakower & Eichen, Philadelphia, Pa., and Craig S. Boyd, Boyertown, Pa., Co-counsel for trustee/plaintiff.

J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant, Simco, Inc.

Norman Ackerman, Philadelphia, Pa., for bankrupt.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should enjoin Simco, Inc. ("Simco"), a creditor of the bankrupt, whose claim has been dis-

charged in the proceeding before us, from continuing an action brought in the United States District Court for the District of Nebraska against the bankrupt. We conclude that, under the facts in this case, the creditor should not be so enjoined because its action does not seek to enforce the discharged debt as a personal liability of the bankrupt but merely seeks to establish the bankrupt's liability in order to permit the creditor to proceed against others.

The facts of the instant case have been stipulated by the parties to be as follows:[1] Prior to its adjudication in bankruptcy, Traffic Safety Company, Inc. ("the bankrupt") was engaged in the business of marking roadways and manufacturing and installing traffic signs for the Commonwealth of Pennsylvania Department of Transportation ("PennDOT") and various local governments. On July 8, 1977, the bankrupt entered into three contracts with PennDOT for the marking of various roadways. The American Fidelity Fire Insurance Company ("AFFI") was surety for the bankrupt on those contracts.[2]

In connection with the PennDOT contracts, the bankrupt ordered roadway marking material known as Presslabs from Highway Safety Consultants, Inc. ("Highway Safety"), the authorized distributor therefor, who in turn ordered them from Simco, the manufacturer of Presslabs. Pursuant to those purchase orders, Simco shipped a quantity of Presslabs to the bankrupt for use on the PennDOT contracts. In late July or early August of 1977, a dispute arose among the bankrupt, Highway Safety and Simco about certain alleged defects in the Presslabs. As a result, a meeting was held among representatives of those parties which resulted in their signing of a document ("the settlement agreement").

On January 6, 1978, Simco brought suit against the bankrupt and Highway Safety in the United States District Court for the District of Nebraska ("the Nebraska court") seeking, inter alia, a declaration of the validity of the settlement agreement and an order directing specific performance of that agreement by the parties thereto.

On April 11, 1978, PennDOT declared a default by the bankrupt on the PennDOT contracts. Thereafter, AFFI, pursuant to the terms of the surety bonds, completed the contracts and undertook to pay all the claims of laborers, materialmen and suppliers in connection therewith. On June 26, 1978, Traffic Safety Company, Inc. was adjudicated a bankrupt after an involuntary petition had been filed against it under the Bankruptcy Act ("the Act").[3] Although Simco was not listed as a creditor by the bankrupt in its schedules, Simco concedes that it had actual knowledge of the bankruptcy proceedings prior to the first meeting of creditors and both Highway Safety and AFFI filed proofs of claim in the case.[4]

On April 11, 1979, we entered an order of discharge pursuant to which the bankrupt was released from all its dischargeable debts and all creditors whose debts were discharged were enjoined from instituting or continuing any action or employing any process to collect such debts as personal liabilities of the bankrupt.[5]

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Prior to that time the bankrupt had executed an agreement by which it became the indemnitor of AFFI on all contracts in which AFFI acted as surety for it.

3. While the Bankruptcy Act has been superseded by the Bankruptcy Code as of October 1, 1979, the provisions of the Act still govern petitions filed before that date. The Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 403(a), 92 Stat. 2683(a) (1978).

4. Highway Safety filed a proof of claim in the amount of $220,033.47 representing the price of the Presslabs which it ordered from Simco for the bankrupt. AFFI filed a proof of claim in the amount of $161,269.58 for liquidated damages and $31,559.50 for contingent damages, which were allegedly incurred in connection with the fulfillment of its obligations under the surety bonds for the PennDOT contracts.

5. See 11 U.S.C. § 32(f) (repealed 1978).

On November 11, 1978, District Judge Urbom of the Nebraska court had entered an order staying the Nebraska suit as to the bankrupt because he found that one of the prayers for relief in that complaint sought money damages from the bankrupt and because he had no reason to believe that such a claim by Simco against the bankrupt was not dischargeable in bankruptcy. Simco subsequently filed in the Nebraska court a motion for leave to amend its complaint therein to delete the request for monetary damages against the bankrupt and a motion to annul the stay of those proceedings as to the bankrupt.

In the meantime Highway Safety and AFFI, together with the trustee of the bankrupt, had filed separate suits against Simco in the United States District Court for the Middle District of Pennsylvania seeking damages for the alleged defects in the Presslabs sold by Simco. Judge R. Dixon Herman of that court entered orders transferring venue of those suits to the Nebraska court. Shortly thereafter, AFFI and the trustee dismissed their suit without prejudice.

On March 11, 1980, the trustee was notified, by a letter from Judge Urbom, of the above motions which Simco had filed in the Nebraska court and that the judge expected to rule on those motions on or after March 24, 1980. On March 24, 1980, the trustee filed the instant complaint in this court seeking a determination of the discharge-ability of the debt owed by the bankrupt to Simco and seeking an injunction against any further proceedings by Simco against the bankrupt.

Simco has conceded that we have jurisdiction to determine the dischargeability of the debt owed by the bankrupt to it[6] and jurisdiction to enjoin Simco from proceeding with its action against the bankrupt in the Nebraska court.[7] Simco has also apparently conceded that the debt owed to it by the bankrupt has been discharged by our order of discharge of April 11, 1979.[8] Thus, the only issue in dispute is whether we should enjoin Simco from proceeding against the bankrupt on the discharged debt.

■ In general, a creditor whose debt has been discharged may not thereafter proceed against the bankrupt on that debt.[9] However, such a creditor is only prohibited from seeking to enforce that debt against the bankrupt as a personal liability. Therefore, in certain instances, the creditor may be permitted to proceed with its action on that debt in order to establish the liability of third parties such as a surety or officer of the bankrupt corporation.[10]

■ Simco argues that the instant case falls within the latter exception, i. e., that it only seeks to proceed with its suit against the bankrupt in order to establish the liability to Simco of Highway Safety. In this

---

**6.** *Id.* at § 11(a)(12) and § 35(c)(1) and (3).

**7.** *See id.* at § 11(a)(15) and Rule 765 of the Rules of Bankruptcy Procedure.

**8.** Although the debt owed to Simco was not listed by the bankrupt in its schedules in time for proof and allowance (that is, within six months of the first meeting of creditors), section 17(a)(3) of the Act only excepts such a debt from discharge if the creditor had no notice or actual knowledge of the bankruptcy proceedings. *See* 11 U.S.C. §§ 35(a)(3) and 93 and Rule 302(e) of the Rules of Bankruptcy Procedure. In the instant case Simco has admitted that it had actual knowledge of this bankruptcy proceeding in time to file a proof of claim and, consequently, the debt owed to it is discharged.

**9.** *See* 11 U.S.C. § 32(f).

**10.** *See* 1A Collier on Bankruptcy ¶ 14.69 (14th ed. 1978) which states that:

The provisions of § 14f apply to all debts discharged pursuant to the various parts of § 17 but apply only to the bankrupt's personal liability upon such debts.... But as mentioned, the provisions apply only as respects the personal liability of the bankrupt. When it is necessary to commence or continue a suit against a bankrupt in order, for example, to establish liability of another, perhaps a surety, such suit would not be barred. The 1970 amendments [to the Bankruptcy Act] were intended for the benefit of the bankrupt but were not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.
*Id.* at 1454–55.

respect, Simco has stated that it is willing to amend its complaint in the Nebraska court to delete any request for specific performance or money damages from the bankrupt and instead to request only the following narrow relief with respect to the bankrupt:

> A declaration that Highway Safety and Traffic Safety are precluded from making any further claims for monetary damages or any other damages of any nature or kind against Simco.[11]

Such an amended complaint, Simco argues, does not seek to enforce the discharged debt as a personal liability of the bankrupt but only to establish the liability of others and, therefore, should be permitted by this court. We agree.

We find that the suit brought by Simco against the bankrupt seeks only to establish the liabilities and/or rights of the bankrupt under the settlement agreement in order to establish the liabilities and rights of the other parties to that agreement. This is evident from the narrow relief requested by Simco against the bankrupt. Since Simco does not seek to enforce the discharged debt as a personal liability of the bankrupt, we conclude that its suit is not contrary to any provision or to the spirit of the Act.[12] *See In re General Steel Tank Co., Inc.*, 478 F.2d 294 (4th Cir. 1973) and *Manufacturers Finance Corporation v. Vye-Neill Company*, 46 F.2d 146 (D.Mass.1930), aff'd 62 F.2d 625 (1st Cir.), *cert. denied* 289 U.S. 738, 53 S.Ct. 657, 77 L.Ed. 1486 (1933), in which the courts held that a creditor should be permitted to proceed to obtain a special judgment against a bankrupt on a discharged debt but coupled with a perpetual stay of execution against the bankrupt where the purpose of the suit is merely to fix the liability of a surety of the bankrupt.

We further conclude that continuance of the suit by Simco in the Nebraska court is the most expeditious way to proceed with a determination of the issues involved therein. It has already been determined (by both the Nebraska court and the District Court for the Middle District of Pennsylvania) that jurisdiction and venue properly exist in the Nebraska court. By contrast, it does not appear that we would have jurisdiction of Simco or of any suit involving Simco and the settlement agreement (absent a consent by Simco) because of the limited jurisdiction of the bankruptcy courts under the Act.[13] Therefore, if the trustee of the bankrupt were to determine that he had a cause of action against Simco, he would probably be required to proceed on it in the Nebraska court anyway. There appears to be no reason why the trustee should not, thus, be required to proceed in the Nebraska court now to defend against Simco's suit and to bring any compulsory counterclaims it may have against Simco.

Consequently, we conclude that Simco should be permitted to proceed with its suit in the Nebraska court against the bankrupt to establish the liabilities and/or rights of the bankrupt under the settlement agreement. Simco will, however, be enjoined from executing on any judgment obtained by it against the bankrupt or from taking any other action against the bankrupt to enforce such judgment as a personal liability of the bankrupt.

---

11. *See* pp. 4 and 5 of Brief of Simco, Inc. in Opposition to the Complaint of Leonard P. Goldberger, Trustee of Traffic Safety Company, Inc.

12. *See* notes 9 and 10 and accompanying text, *supra.*

13. 11 U.S.C. § 46(b) (repealed 1978). *See*, e. g., *In re Penco Corp.*, 465 F.2d 693 (4th Cir. 1972); *Hollywood Nat'l Bank v. Bumb*, 409 F.2d 23 (9th Cir. 1969); *In re 671 Prospect Avenue Holding Corp.*, 118 F.2d 453 (2d Cir. 1941); *Tamasha Town and Country Club v. McAlester Constr. Finance Corp.*, 252 F.Supp. 80 (S.D.Cal. 1966). *See generally*, 2 Collier on Bankruptcy ¶ 23.02 *et seq.* (14th ed. 1978).