IRVING LEVITT CO., INC. *vs.* SUDBURY MANAGEMENT
ASSOCIATES, INC.; JOHN L. TREVISANI & others,[1] interveners.

Suffolk. September 19, 1984. — November 28, 1984.

Present: DREBEN, KAPLAN, & FINE, JJ.

*Superior Court,* Jurisdiction. *Bankruptcy,* Stay of other proceedings.
*Practice, Civil,* Interlocutory appeal, Attachment.

In light of the automatic stay provisions of 11 U.S.C. § 362 (1976), the
   Superior Court was without jurisdiction to enter a special judgment
   pursuant to G. L. c. 235, § 24, against the defendant in an action on a
   promissory note, where the defendant had filed a petition in bankruptcy
   a month before the entry of the special judgment. [15-18]
An order denying an application to vacate an attachment does not have the
   finality required for an appeal. [18-19]

CIVIL ACTION commenced in the Superior Court on June 7,
1978.

Motions to vacate a special judgment and to dissolve an
attachment were heard by *Robert Steadman, J.*

*Linda A. Serafini* for Sudbury Management Associates, Inc.,
& others.

*Laurence A. Mills* for Irving Levitt Co., Inc.

KAPLAN, J.  This litigation began in 1978 as an action in
Superior Court by Irving Levitt Co., Inc. (Levitt), a meat
supplier, against Sudbury Management Associates, Inc. (Sud-
bury), owner of a restaurant, to collect upon a promissory note
made by Sudbury in favor of Levitt, and to recover the price
of merchandise sold by Levitt to Sudbury. The latter's answer
to the amended complaint set up a number of defenses. The
action took its course with discovery and other matters. In
May, 1980, Levitt applied for attachment of real property al-

---

[1] Olga Trevisani and Robert A. Trevisani; the three comprising a partner-
ship called "Sudbury Associates."

legedly owned beneficially by Sudbury although standing formally in the name of "Sudbury Associates," a partnership consisting of three members of the Trevisani family. Upon supporting and opposing affidavits, a writ of attachment for the amount of $66,000 issued in June, 1980, and was served and placed on record the following month.

Further time passed inconclusively, and at last, in October, 1980, Levitt moved to force the case to trial. The motion was granted and the action was ordered to the jury calendar for December, 1980 (Sudbury having previously demanded a jury). Evidently Sudbury failed to appear for trial as required. A judge of the Superior Court declared Sudbury in default and on January 23, 1981, entered a "special" judgment against it pursuant to G. L. c. 235, § 24, as amended by St. 1975, c. 377, § 121 (quoted in part in the margin).[2] This judgment reflected the fact that on December 19, 1980, Sudbury had filed a voluntary petition in bankruptcy (for "reorganization" under chapter 11). The judgment recited, following the wording of § 24, that an attachment had issued more than four months before the bankruptcy and that, except for the bankruptcy, Levitt would be entitled to judgment for the amount claimed; wherefore judgment now entered for that amount, $49,704, against Sudbury, together with interest and costs.

---

[2] "If a plaintiff would be entitled to a judgment or a decree, except for the bankruptcy or insolvency of the debtor or his discharge therein, and if, more than four months prior to the commencement of proceedings in bankruptcy . . . any property, estate, interest or money of a debtor has been attached . . . . the court may at any time upon motion enter a special judgment or decree for the plaintiff, for the amount of his debt or damages and costs, or for such other relief as he may be entitled to, to be enforced in the first instance only against the property, estate, interest or money, so attached or brought within the control of a court of equity. If such property, estate, interest or money shall be insufficient to satisfy the judgment or decree in full, the court may thereafter, if the debtor's discharge is refused, or if he shall unreasonably delay to prosecute such proceedings to a discharge, order an alias or other successive execution or other process to be issued upon such judgment or decree for such portion thereof as remains unsatisfied. . . ."

(This statute dates back to 1885, see St. 1885, c. 59, § 1.)

Later in January, 1981, Sudbury filed a suggestion of bankruptcy with a demand that the action be continued pending the bankruptcy. This was met by Levitt's motion to strike the suggestion, which was denied. Sudbury then moved in April, 1981, to vacate the special judgment on the ground that the intervening bankruptcy deprived the Superior Court of jurisdiction to enter it, citing Mass.R.Civ.P. 12(h)(3), 365 Mass. 757 (1974) (preservation of defense of lack of subject matter jurisdiction), and 60(b)(4), 365 Mass. 829 (1974) (relief from void judgment).

The motion to vacate remained pending, not acted upon, until September, 1983. In the meantime Sudbury had "removed" the action to the Bankruptcy Court pursuant to 28 U.S.C. § 1478(a) (Supp. II 1978).[3] It was not until January, 1983, that the bankruptcy judge remanded the action to the Superior Court "for prosecution and determination."[4] In September, 1983, a judge of the Superior Court, acting upon the deferred motion to vacate the special judgment, denied it. This denial is before us on appeal by Sudbury.[5]

It remains to take up the attachment. In August, 1981, the partnership "Sudbury Associates" moved to intervene in the Superior Court action for the purpose of moving to vacate the

---

[3] Section 1478(a) provides: "A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action."

[4] Remand by the Bankruptcy Court is provided for by 28 U.S.C. § 1478(b) (1982) which states that it may be done "on any equitable ground." The order of remand herein referred to Interim Rule 7003(j) (Remand) of the so-called "Suggested Interim Bankruptcy Rules" drafted by the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States (1979).

[5] The judge of the Superior Court took the step of directing the entry of Levitt's "special" judgment against Sudbury as a final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), freeing it from connection with John T. Trevisani, who had been joined as a party in the action by reason of his personal indorsement of the promissory note, and had filed a voluntary petition in bankruptcy sometime before August, 1983.

attachment; the partnership was claiming that the real property was not beneficially owned by Sudbury but rather was owned beneficially as well as nominally by the partnership, and that there was no substance in any claim by Levitt that the property had been put in the name of the partnership as a means of impeding recourse to it by creditors of Sudbury. Intervention was allowed. After the remand, the motion to vacate the attachment was heard and denied, also in September, 1983, and this, too, is sought to be reviewed here.

1. The judge erred in denying Sudbury's motion to vacate the special judgment against it. Upon the filing of Sudbury's petition in bankruptcy, Levitt's action was stayed automatically by force of the explicit, sweeping provisions of § 362 of the Bankruptcy Code of 1978, 11 U.S.C. § 362 (Supp. II 1978).[6] See *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir. 1982); *Ellison* v. *Northwest Eng. Co.*, 707 F.2d 1310 (11th Cir. 1983); *United Northwest Federal Cred. Union* v. *Arens*, 233 Kan. 514 (1983). Compare *Marine Midland Bank* v. *Herriott*, 10 Mass. App. Ct. 743, 746-747 (1980), with *Association of St. Croix Condominium Owners* v. *St. Croix Hotel Corp.*, 682 F.2d 446, 448-449 (3d Cir. 1982). The

---

[6] The basic provisions are § 362(a)(1)-(6):

"Automatic stay. (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of —

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title. . . ."

Superior Court was deprived of power to go further; thereafter it lacked subject matter jurisdiction, and the judgment it entered was "void." See *In Re Smith Corset Shops, Inc.*, *supra*, citing *Kalb* v. *Feuerstein*, 308 U.S. 433 (1940). Sudbury applied seasonably under rule 60(b)(4) to vacate the judgment for that reason.[7]

The fact that the judgment involved was "special" under G. L. c. 235, § 24, makes no difference; the automatic stay forbade its making and entry. A § 24 judgment would fix the amount of the debt owed to Levitt and allow Levitt to proceed as far as it was entitled against the attached property, any balance to be provable ordinarily in the bankruptcy. There are, indeed, plenty of cases in the courts of this Commonwealth in which judgments were obtained by creditors notwithstanding their debtors' bankruptcies, but the background must be understood. Under the bankruptcy act of 1898, the filing of a petition in bankruptcy had the effect of an automatic stay of certain litigations against the prospective bankrupt, but only until the adjudication in bankruptcy. For a period thereafter, a State court was not barred from proceeding with an action against the bankrupt, the result, where suitable, finding its place ultimately in the bankruptcy as a provable claim. Whether to go forward with the action or desist from it was discretionary with the State court, subject, no doubt, to the power of the Bankruptcy Court, for sufficient reason, to impose a postadjudication stay. See the text of § 11a of the Bankruptcy Act of 1898, 11 U.S.C. § 29a (1976), describing the automatic stay.[8] It was

---

[7] In moving to vacate the judgment, Sudbury also alleged excusable neglect under Mass.R.Civ.P. 60(b)(1), 365 Mass. 828 (1974), in that its counsel was not aware that the action had been called for trial.

[8] "A suit which is founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of a petition by or against him, shall be stayed until an adjudication or the dismissal of the petition; if such person is adjudged a bankrupt, such action may be further stayed until the question of his discharge is determined by the court after a hearing, or by the bankrupt's filing a waiver of, or having lost, his right to a discharge, or, in the case of a corporation, by its failure to file an application for a discharge within the time prescribed under this title. . ."

(We do not trace the bankruptcy rules promulgated from time to time which dealt with the subject of stays.)

within the discretionary leeway after adjudication that our courts applied the predecessor of G. L. c. 235, § 24, or the cognate § 25 dealing with instances where bond had been given to dissolve attachment. For the practice, see the opinion of Brewster, J., in *Manufacturer's Fin. Corp.* v. *Vye-Neill Co.*, 46 F.2d 146, 147-148 (D. Mass. 1930), aff'd, 62 F.2d 625, 628 (1st Cir.), cert. denied sub nom. *Kane* v. *Manufacturers' Fin. Corp.*, 289 U.S. 738 (1933); and *Rosenthal* v. *Nove*, 175 Mass. 559 (1900); *Feigenspan* v. *McDonnell*, 201 Mass. 341, 346 (1909); *Rogers* v. *Abbot*, 206 Mass. 270 (1910); *Smith* v. *Miller*, 226 Mass. 187, 188 (1917); *Berry Clothing Co.* v. *Shopnick*, 249 Mass. 459 (1924).[9]

The present bankruptcy law, as indicated, has no such tolerance for the State courts; the automatic stay takes hold from the time the petition is filed, and persists. This, however, need not nullify a statute like G. L. c. 235, § 24, for it would have been in order for a creditor in Levitt's position, if so advised, to apply to the Bankruptcy Court to lift the automatic stay pro tanto.[10] It did not do so; on the contrary, the bankrupt caused the action to be removed to the Bankruptcy Court.

---

[9] As noted, G. L. c. 235, § 25, deals with the common situation of a debtor-defendant in our local court who had given bond to dissolve attachment, and then gone bankrupt. After adjudication, the creditor might recover judgment against the bankrupt, thus touching off the liability of the sureties on the bond, with the sureties being then presumably subrogated and put in a position to prove in the bankruptcy.

Statutory "special" judgments were not the only ones allowed by our courts after adjudication: in discretion, a court could allow a judgment although no security was involved, or, apparently, permit deviation from the terms of the "special" statutes. See the *Manufacturers' Fin.* and *Smith* cases cited above.

[10] For the duration of the automatic stay, see 11 U.S.C. § 362(c) (Supp. II 1978), and as to application to lift the stay, § 362(d)-(g) (1982). See also *Matter of Holtkamp*, 669 F.2d 505, 507-509 (7th Cir. 1982); *Cathey* v. *Johns-Manville Sales Corp.*, 711 F.2d 60, 62-63 (6th Cir. 1983).

(We disclaim any attempt at a comprehensive statement of the place of a statute such as G. L. c. 235, § 24, in the scheme of the Bankruptcy Code of 1978.)

With the action remanded, and the special judgment vacated as we shall require, the matter may be resumed in Superior Court on the merits.[11]

2. The order denying the application to vacate the attachment, and thereby continuing it, does not have the finality required for an appeal. See *W.T. Grant Co.* v. *Haines*, 531 F.2d 671, 678 (2d Cir. 1976), and cases cited; *Brastex Corp.* v. *Allen Intl., Inc.*, 702 F.2d 326, 329-330 (2d Cir. 1983); *Weiss* v. *Balaban*, 315 Mass. 390, 393 (1944). Cf. *Orlov* v. *MacNeil Bros.*, 335 Mass. 768 (1957). Upon the vacation of the special judgment, the attachment continues in its provisional status and remains under the control of the court. See *In re Posner*, 700 F.2d 1243, 1245 (9th Cir. 1983). As far as appears, the question of the ownership of the property attached has not been pursued in the Superior Court action beyond the submission of conflicting affidavits.

In conclusion, we observe that there has been mention by the parties of happenings in the Bankruptcy Court that might have a bearing on the outcome of the action or of the proceedings on the attachment. We take no notice of any such transactions. If relevant they should be brought to the attention of the Superior Court.

The action, which for all the world looked like a simple collection case on a promissory note and a bill for merchandise, has now lasted more than six years. It is an example of how the system allows a determined fox to contrive to keep ahead of the hounds. Perhaps this serves some social purpose. However the time is ripe and overripe for disposition, and in that connection we cast a quizzical eye at several defenses interposed by the counsel who wrote the answer to the amended complaint.[12] It may be, and we prefer to assume, that counsel

---

[11] This is contemplated by the terms of the remand order, as indicated above, which appears implicitly to lift the stay. Of course we do not purport to define any possible continuing relation of the Bankruptcy Court to the action after remand.

[12] Sudbury defended against the count on the promissory note on grounds of (a) force and duress; (b) fraudulent representations as to prices and quality of goods furnished as consideration for the note; (c) postponement of the due

were faithful to their public obligation under Mass.R.Civ.P. 11(a), 365 Mass. 753 (1974). Yet we think it appropriate to remind current counsel that the obligation continues through the action.

The special judgment is vacated. The appeal from the order denying vacation of the attachment is dismissed.

*So ordered.*

---

date of the note; (d) gross overcharges and inferior deliveries; (e) late deliveries and refusal to credit overcharges justifying Sudbury's failure to pay. Sudbury defended against the count for merchandise sold on grounds (d) and (e).