In re JOHNS–MANVILLE CORPORA-
TION, et al., Debtors.

JOHNS–MANVILLE CORPORATION,
et al., Plaintiffs,

v.

The ASBESTOS LITIGATION GROUP,
John Doe and Each Other Member
Thereof, For and on Behalf of Itself, its
Attorneys, Agents and all other Persons
Acting For or on its Behalf or on Behalf
of the other Defendants Herein, and for
and on Behalf of all Asbestos Health
Claimants of and all Parties (other than
the Debtors) to Asbestos-Related Litiga-
tion Brought against the Debtors
and/or Former or Present Officers, Di-
rectors, Employees, Contractors, Con-
sultants, Insurers, Sureties, Agents, and
like Persons and Entities of the Debtors,
GAF Corporation, For and on Behalf of
itself and all Defendants (other than the
Debtors) in any Asbestos-Related Liti-
gation Against the Debtors and/or For-
mer or Present Officers, Directors, Em-
ployees, Contractors, Consultants, Insur-
ers, Sureties, Agents and Like Persons
and Entities of the Debtors in any As-
bestos-Related Litigation Against the
Debtors and/or Present Officers, Di-
rectors, and Jeffrey Herrmann and Lin-
da J. Herrmann, Defendants.

OCCIDENTAL CHEMICAL
CORPORATION,
Plaintiff,

v.

JOHNS–MANVILLE CORPORATION,
Debtor.

Beatrice Mae HANSEN, individually and
as an independent executrix of the es-
tate of Andrew T. Hansen, deceased,
Plaintiff,

v.

JOHNS-MANVILLE SALES CORPORA-
TION, Debtor, Defendant.

JOHNS–MANVILLE SALES
CORPORATION, et al.
v.

Edward J. JANSSENS, Patsy J. Janssens,
Wayne Hogan, Brown, Terrell & Hogan,
P.A. and Ronald Motley, Respondents.

Bankruptcy No. 82 B 11656.
Adv. Nos. 82–6377A 82–6451A
and 82–6450A.

United States Bankruptcy Court,
S.D. New York.

Jan. 10, 1983.

On Rehearing Jan. 26, 1983.

See also, Bkrtcy., 26 B.R. 405.

Levin & Weintraub & Crames, New York City, for debtors; Mitchell Perkiel and Herbert Edelman, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for Creditors Committee; John Gellene, New York City, of counsel.

Jerome Feller, New York City, for SEC.

Moses & Singer, New York City, for Asbestos plaintiffs; Irving Picard and Robert J. Rosenberg, New York City, of counsel.

Anderson, Russell, Kill & Olick, New York City, for Keene Corp.; Arthur Olick, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for Owens-Illinois; Ellen Werther and Richard Krasnow, New York City, of counsel.

Stroock & Stroock & Lavan, New York City, for Bank Creditors; Andrew DeNatale, New York City, of counsel.

Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, P.C., Newark, N.J., for GAF; Anthony J. Marchetta, Newark, N.J., of counsel.

Breed, Abbott & Morgan, New York City, for Lake Asbestos of Quebec; C. MacNeil Mitchell, New York City, of counsel.

Arvey, Hodes, Costello & Burman, Chicago, Ill., for Pittsburgh-Corning; Robert B. Chatz, Chicago, Ill., of counsel.

Wilentz, Goldman & Spitzer, Woodbridge, N.J., for Asbestos Litigation Group; Alan Darnell, Woodbridge, N.J., of counsel.

Gene Mesh, Co., L.P.A., Cincinnati, Ohio, for Jeffrey & Linda Herrmann; Richard S. Wayne, Cincinnati, Ohio, of counsel.

Conboy, Hewitt, O'Brien & Boardman, New York City, Carpenter, Bennett & Morrissey, Newark, N.J., for Occidental Chemical Corp.; Timothy M. Broas, New York City, James G. Gardner, Newark, N.J., of counsel.

David Berger, and Berger & Montague, P.C., Philadelphia, Pa., Wolf, Popper, Ross, Wolf & Jones, New York City, for Schools of 1109B Committee; Richard L. Eppinger, Philadelphia, Pa., Stanley Nemser, New York City, of counsel.

Arnold & Porter, Washington, D.C., for Inside Directors of Johns-Manville; Irvin B. Nathan, Washington, D.C., of counsel.

Chester B. Salomon, New York City, for Hansen; Chester B. Salomon and David Green, New York City, of counsel.

Zalkin, Rodin & Goodman, New York City, for American Mut. Liability Co.; Richard Toder, New York City, of counsel.

DeBevoise & Liberman, New York City, for Public Service Elec. & Gas, Pacific Gas & Elec. Southern Gas & Cal Edison; Rosalind Fuchsberg Kaufman, New York City, of counsel.

OMNIBUS DECISION ON THE VARIOUS PROCEEDINGS MOTIONS AND CROSS–MOTIONS BROUGHT REGARDING WHETHER THE AUTOMATIC STAY APPLIED TO MANVILLE'S EMPLOYEES, AGENTS, AND OTHER RELATED ENTITIES

BURTON R. LIFLAND, Bankruptcy Judge.

This matter is before the court in the context of various adversary proceedings and motions. The principal proceeding concerns whether the automatic stay extends

to the debtors, employees, agents and other related entities and is brought by the debtor, Johns-Manville Corporation ("Manville"). Manville requests declaratory relief to extend the automatic stay under Section 362 of title 11, United States Code ("the Code") to encompass various direct actions and discovery proceedings brought against present, former and future Manville officers, directors, employees, insurers, sureties and other agents. Manville urges this court by its amended complaint filed on November 22, 1982 to use its equitable powers to grant such an extension of the stay pursuant to Sections 362 and 105 of the Code. The debtor contends that these actions and proceedings against entities related to Manville are brought solely because these individuals or institutions either acted for Manville or are legally responsible for the Manville activities which purportedly gave rise to the very asbestos-related health claims stayed as to Manville.

## I. BACKGROUND FACTS

On August 26, 1982, Manville and twenty of its subsidiaries or affiliates filed petitions for reorganization under title 11 of the Code. Manville continues to operate its business and manage its property as a debtor-in-possession under Sections 1107 and 1108 of the Code.

Manville is a diversified manufacturing, mining and forest products company conducting its business through five principal operating subsidiaries. Manville is the world's largest miner, processor, manufacturer and supplier of asbestos and asbestos-containing products.

· Manville's financial difficulties are alleged to have arisen from its position as a defendant or co-defendant in the more than 11,000 asbestos-related personal injury and property damage suits brought by more than 15,500 plaintiffs in 46 states. Some court systems have more than 2000 asbestos suits presently pending. An average of 425 new asbestos lawsuits per month were brought against Manville pre-petition and it estimates that approximately 32,000 additional suits could be brought against it in the next 27 years.

Manville estimates its current cost for the suits at approximately $40,000 per case, including defense expenses, but excluding cases on appeal. Since 1981, Manville has been found liable for punitive damages in several asbestos lawsuits and anticipates additional punitive damages awards which would greatly increase its potential liabilities. According to a study commissioned by Manville, its potential liability attributable to asbestos litigation will not be less than $2 billion over the next twenty years. Manville represents that these enormous actual and potential liabilities constitute the principal reason for its Chapter 11 filing.

In addition, Manville is engaged in vital litigation with its insurance carriers regarding coverage for the claims asserted against it in the asbestos litigation. Most of Manville's insurance carriers have largely disclaimed coverage and have refused to conduct the defense of or to indemnify Manville from its liability in the asbestos litigation. At least twenty actions are now pending to resolve these questions. The difficulty in identifying the carrier which issued a particular insurance policy to Manville thirty or forty years ago has complicated the coverage issues. (For further data regarding the background of the instant proceeding, see facts sections in the accompanying decision on the Motion for Summary Judgment For Declaratory Relief to Extend the Stay to Encompass Co-Defendants ("the Co-Defendants Stay Extension Proceeding"), In re Johns-Manville, (GAF Corp., Keene Corp. et al. v. Johns-Manville Corp., et al.), Adversary Proceeding No. 82–6221A.)

## II. THE INSTANT PROCEEDINGS

The first cause of action of Manville's amended complaint herein alleges that allowing the continuation of approximately 250 lawsuits brought by the above captioned (Proc. 82–6377A) defendants against "employees, agents and others" related in some capacity to the debtor will

severely and adversely impact property of the Debtors' Chapter 11 estates inasmuch

as the Debtors, by their respective corporate By-laws, various contracts, or operation of law, will be obligated to defend and indemnify certain of the Employees, Agents or Others.... Amended Complaint ¶ 10.

This first claim also alleges that these defendants are attempting to achieve an "end run" by continuing to prosecute proceedings against Manville's employees, agents and others notwithstanding that these actions involve the same issues and subject matter as are involved in the stayed litigations against Manville.

In the second cause of action, Manville alleges that the continuation of discovery and related proceedings against "Employees, Agents and Others" in these 250 lawsuits "represents nothing more than procedural devices employed by certain of the Defendants to attempt to thwart and foil the fundamental debtor protection and effect of the automatic stay." *See* Amended Complaint ¶ 19. Manville also makes the same allegations as in the first cause of action as to the negative impact that such continued discovery will have on the reorganization of Manville's business.

The third cause of action seeks extention of the automatic stay to enjoin "direct action" lawsuits against insurers and sureties of the debtor to collect and recover claims against the debtor that arose before the Manville filing. Manville contends that these coverages represent property of its estate which must be preserved for the benefit of all creditors.

The fourth cause of action seeks extension of the automatic stay to enjoin the Herrman litigation, *Herrman v. Beauchemin, et al.,* Civ.Action No. 82–M–1488 (D.Colo.1982), a security holders' class action suit commenced after the Manville filing against various of the "employees, agents and others" currently pending in the United States District Court for the District of Colorado.

Intervenor defendant Keene Corporation ("Keene") has moved this court for partial summary judgment on the first, second and third causes of action. Keene's motion has been joined in by other codefendants of Manville in thousands of asbestos suits pending throughout the country ("the codefendants") including Owens-Illinois Corporation ("Owens-Illinois") and the GAF Corporation ("GAF").

Keene, GAF, Owens-Illinois and Pittsburgh Corning Corporation were permitted to intervene as parties defendant by motion granted at a hearing held before this court on December 7, 1982. The Committee of Asbestos-Related Litigants and/or Creditors has also joined in Keene's motion for partial summary judgment on what they term as different grounds than those stated by Keene in its moving papers.

In addition, Manville has moved this court for a preliminary injunction or for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as applied in this proceeding by Bankruptcy Rule 756, granting a stay of the proceedings in the Herrman suit. The Herrman defendants also move this court for summary judgment dismissing the fourth cause of action.

Various other proceedings separate and apart from the instant proceeding brought by Manville have been brought to determine whether the automatic stay applies to a particular entity related to Manville.

In two of these proceedings, *Beatrice Mae Hansen v. Johns-Manville Sales Corporation,* No. 82–6450A (Bankr.S.D.N.Y.1982) (arising from an action on appeal in the Fifth Circuit) and *Johns-Manville Sales Corporation, et al. v. Edward J. Janssens, et al.,* (Bankr.S.D.N.Y.1982) (arising from an action, Docket No. A–J–109 in the District Court of Appeals, First District, State of Florida), the issue for determination by this Court is whether the automatic stay should be continued to insulate Manville from proceeding with an appeal of a judgment against it where it has posted a supersedeas bond to stay enforcement of that judgment pending appeal.

In another proceeding, *Occidental Chemical Corporation v. Johns-Manville Corporations,* No. 82–6451A, (Bankr.S.D.N.Y.1982),

Occidental Chemical Corporation ("Occidental"), a Manville codefendant, seeks to obtain relief from the automatic stay to depose various representatives of Manville on issues specific to its factual defense to various asbestos lawsuits pending against it in the District of New Jersey.

Finally, Lac D'Amiante Du Quebec, Ltd. ("Lake Asbestos"), another co-defendant of Manville in more than 500 asbestos suits pending in various jurisdictions throughout the country, has applied by order to show cause to this court for declaratory relief. Lake Asbestos seeks an order clarifying the effect of the automatic stay on discovery directed solely to Manville's present or former directors, officers or employees who may or may not be named parties in the Lake and Occidental New Jersey lawsuits. As to nonparty Manville employees, this is for all practical purposes a request for modification of the Section 362 stay. In its application, Lake Asbestos specifies who it seeks to depose and what role each purported deponent will play in its defense strategy. Lake Asbestos, having first moved to dismiss Manville's complaint for declaratory relief to extend the stay, has also joined in Keene's motion for partial summary judgment aimed at dismissing Manville's above-captioned adversary proceeding. To a large extent the relief requested by Lake and Occidental is disposed of in the accompanying decision on the co-defendants' stay extension proceeding (stay extension and modification refused).

In the above-mentioned related proceeding (denoted as Decision No. 1 . . . Automatic Stay Proceedings), the co-defendants who have joined in Keene's motion herein and other co-defendants request this Court to use its equitable powers to extend the umbrella of the stay to shield them from the continuation of suits while the suits against Manville are stayed.

## III. ISSUES PRESENTED

The prime issue presented by the numerous proceedings, motions and cross-motions brought is whether the automatic stay under Section 362 of the Code may be extended by virtue of Section 105 of the Code to preclude all suits against Manville's employees, agents (past and present) and other related entities.

For the reasons hereinafter reiterated and more fully detailed, this court holds that:

(1) With regard to the first and second causes of action in Manville's amended complaint for declaratory relief, the full scope of Keene's motion for partial summary judgment is denied and all suits and discovery requests pursued against certain key officers, directors, employees and agents sued individually and specifically enumerated in an order to be settled in conformity with this opinion shall be temporarily stayed until March 1, 1983 to coincide generally with the expiration date of the debtor's plan filing exclusivity period, presently February 22, 1983. *See* 11 U.S.C. 1121(b). Therefore, the discovery requests against the specific officers and employees of Manville in the complaints by Occidental and Lake Asbestos may be stayed until March 1, 1983, to the extent these are employees who are to be protected in the order to be settled. To the extent that the discovery requests involve Manville employees already protected by the automatic stay favoring Manville, the requests are denied. Moreover, all discovery requests directed against former Manville officers and those present employees sued individually may be pursued. (2) With regard to the third cause of action in Manville's amended complaint, Keene's motion for partial summary judgment is granted and all suits against Manville's insurers and sureties shall not be stayed and may continue unabated. Accordingly, the appeals in the *Hansen* and *Janssen* cases may proceed as neither of these appeals affect property of the Manville estate in that these plaintiffs can pursue relief through the posted supersedeas bonds to the extent permitted by law. (3) Regarding the fourth cause of action in Manville's amended complaint, Manville's motion for a preliminary injunction is granted enjoining Linda and Jeffrey Herrman from pursuing their shareholders class

action against the officers and directors of Manville. The Herrmans' motion for summary judgment dismissing this fourth cause of action is denied.

### DISCUSSION OF LAW

A. *Manville's Application to Extend the Stay to Cover its Employees and Agents*

As fully described in the accompanying decision on the co-defendants' stay extension proceeding, the relief afforded by Section 362 of the Code is narrowly focused on protection of the debtor. The automatic stay is intended to protect the assets of the debtor's estate from dissipation and administrative interference. As the legislative history states:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the *debtor* a breathing spell from his creditors. It stops all collection efforts, all harrassment, and all foreclosure actions. It permits the *debtor* to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. *See* S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5840–41 (1978) (emphasis added).

*See also Paden v. Union for Experimenting Colleges and Universities,* 7 B.R. 289 (N.D. Ill.1980) (describing the reasons for the predecessor to Section 362, Rules of Bankruptcy Procedure 11–44 applied to the 1898 Bankruptcy Act).

The legislative history also notes that Section 362(a) is fundamental to any proceeding because it "permits the debtor to attempt a repayment or reorganization plan." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 340, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6297 (1977); Senate Rep. No. 95–989, 95th Cong. 2d Sess. 49 (1978).

Section 105 of the Code, the All-Writs statute, enables a court to do whatever is "necessary and appropriate" in order to carry out the provisions of title 11.[1] A

bankruptcy court may use its equitable powers to issue injunctive relief against proceedings in other courts when the bankruptcy court is satisfied that such a proceeding would either defeat or impair its jurisdiction with respect to a case pending before it. *See Continental Illinois National Bank & Trust Co. v. Chicago Rock Island & Pacific Ry. Co.,* 294 U.S. 648, 675, 55 S.Ct. 595, 605, 79 L.Ed. 1110 (1935). Thus, to protect its jurisdiction, a court may enjoin suits in another forum against a debtor or which involve a debtor's property. *See In re Chanticleer Associates, Ltd.,* 592 F.2d 70, 73–74 (2d Cir.1979).

A leading treatise articulates the proper role of Section 105 in extending the automatic stay to prevent detriment to or interference with the debtor's estate:

> [Section 362 of the Code] does not attempt to state the jurisdiction of the bankruptcy court with respect to stays and injunctive relief or to determine the boundaries of the exercise of the court's injunctive power.
>
> Section 105 which is the successor to Section 2A(15), gives the court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.
>
> 2 Collier on Bankruptcy ¶ 362.02 (15th Ed. 1982)
>
> \* \* \* \* \* \*
>
> [T]he exceptions to the automatic stay of § 362(a) which are set forth in § 362(b) are simply exceptions to the stay which protect the estate automatically at the commencement of the case and are not limitations upon the jurisdiction of the bankruptcy court or upon its power to enjoin. That power is generally based upon § 105 of the Code. *The court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case.* 2 Collier on Bankruptcy ¶ 362.05 (15th ed. 1982) (emphasis added).

---

1. Section 105 of the Code provides:
   (a) The bankruptcy court may issue any order process, or judgment that is necessary or

appropriate to carryout the provisions of this title. 11 U.S.C. § 105 (1979).

In the instant case, in great measure the suits being pursued against Manville's officers and employees are in reality derivative of identical claims brought against Manville. Manville has established through its affidavits submitted herein that because there is an identity of interests between itself and these officers and employees, the stay must be extended for limited purposes for a short period of time only to cover some of these related entities or persons. Manville has demonstrated, at this point in time only, that the continuation of the actions against these related entities would directly interefere with the debtor's estate and/or with its chances for a successful reorganization. *See* Affidavit of Dennis L. Markusson sworn to December 16, 1982 ("the Markusson Affidavit") and Affidavit of Richard Von Wald sworn to December 20, 1982 (the "Von Wald Affidavit").

▮ The debtor thereby demonstrates that the staying of discovery against it will not be effective if discovery is allowed to proceed at this time against Manville's key operating personnel named as defendants who are presently working for the company at very high levels in numerous divisions of the company. *See* Von Wald Affidavit ¶¶ 6–8. The massive drain on these numerous individuals' time and energy at this crucial hour of plan formulation in either defending themselves or in responding to discovery requests could frustrate if not doom their vital efforts at formulating a fair and equitable plan of reorganization.[2]

Faced with a somewhat analogous situation, limited stay relief was granted by Bankruptcy Judge Williams Lasarow, Central District of California in *In re Wickes,* (*Wickes v. Groebner, et al.,* Adv. Proceeding No. LA–82–6107 filed on August 14, 1982). (A copy of the *Wickes* decision is attached to the Debtor's Motion for a Preliminary Injunction or Partial Summary Judgment on the Herrman Cause of Action).

In *Wickes,* Judge Lasarow enjoined under Section 105 a number of class actions against former directors and former and present officers of the debtor for three months. He found that if these suits were allowed to proceed at that time, the debtor would suffer irreparable injury. To begin with, there was a risk that a judgment of liability against the former senior executives could constitute a finding of "preliminary liability" against the debtor. *Id.* at 7. The Court was also concerned that the debtor could be exposed to claims for contribution and indemnification by the officers, that depositions of the individual defendants could be used against the company, and that the debtor could be collaterally estopped in subsequent actions from relitigating issues resolved against its former officers and directors. *Id.* at 7–8. As a result, the Court found that:

Wickes may be constrained to participate in the Class Actions in order to attempt to minimize the risks it otherwise runs. In that event, Wickes will have to devote a significant portion of its limited manpower and financial resources to adequately satisfy the duplicative discovery requirements of the Class Actions. Such participation will irreparably harm Wickes in that it will interfere with the administration of the estates and impede the rehabilitation efforts of the debtor in possession. *Id.* at 8–9.

This diversion, the Court concluded, would violate the purpose of the automatic stay and substantially vitiate its benefits, justifying an injunction under Section 105. *See also SEC v. First Financial Group of Texas,* 645 F.2d 429, 440 (5th Cir.1981) (bankruptcy court has power under Section 105 to enjoin an action that "threatens the assets of the debtor's estates"); *In re Equity Funding Corp. of America,* 396 F.Supp. 1266 (C.D. Cal.1975) (where the court enjoined actions against nonbankrupt subsidiaries of debtor which would have impeded the reorganization proceeding).

2. It is impossible for this Court to discern at this time the names of the key employees and agents of Manville against whom the defendants herein will be enjoined from proceeding. These names are to be supplied by Manville in

the context of the order to be settled within five days in conformity with this opinion. However, this list of names should in no event exceed 25 names.

Along these lines, in *In re U.S. Air Duct Corporation,* 8 B.R. 848, 7 B.C.D. 242 (Bkrtcy.N.D.N.Y.1981), the issue before the court was whether a state court suit to recover contributions to employees' benefit trust funds brought against the president/joint obligor of the debtor could continue outside the bankruptcy court. After concluding that the claim asserted against the nondebtor was identical to the claim against the debtor, the court then considered the potential adverse effect the state court action might have on the debtor's estate. The court declared:

> The fundamental question of a relation to a case under the Bankruptcy Code is whether the determination of the claims against the nondebtor will or will not effect [sic] the debtor's assets and/or liabilities as they existed at the date of the petition and its schedules. The criterion to be adopted in such a situation will undoubtedly be related to a determination of whether the outcome of the proceeding could have any effect on the estate being administered in bankruptcy. *See U.S. Air Duct,* 8 B.R. 848, 7 B.C.D. 242, 244.

Moreover, other bankruptcy courts have extended the Section 362 automatic stay pursuant to Section 105 to enjoin acts against nondebtors which would frustrate the statutory scheme or impact adversely on a debtor's ability to formulate a plan or on the debtor's property. *See, e.g., In re Landmark Air Fund II,* 19 B.R. 556 (Bkrtcy. N.D.Ohio 1982); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bkrtcy.E.D.N.Y.1980).

In granting a limited stay extension, this court is not unmindful of the arguments advanced by both the co-defendants and the Asbestos Committee as to the impediment to the defense and prosecution, respectively, of asbestos related suits against nondebtor co-defendants that a stay would represent if it were indefinite in duration. However, this court has examined the above-detailed authority as well as the cases cited by Manville regarding due process requirements.[3] After a thorough review of these authorities, including the decision granting a temporary respite despite due process consideration in *In re Wickes, supra,* it is my conclusion that the interests of all concerned will be most ably protected by permitting this short breathing spell so as to remove the obstacle to a consensual plan of reorganization that the continuance of these suits against these specific employees and agents presently represents.

In addition, this court is fully aware that its decision herein is accompanied by its

---

**3.** The co-defendants cite numerous cases setting forth the requirements of due process in various situations to support the general proposition, which Manville does not dispute, that elements of procedural due process include notice and an opportunity to be heard and, where issues of fact are important, an opportunity to confront and cross-examine witnesses. Their conclusion that granting Manville the relief requested will deprive the defendants of an opportunity for full and fair trials, however, is supported by neither the law nor the facts of the case.

Arguing that the injunctive relief Manville seeks would unconstitutionally restrict their evidentiary record, the defendants rely inappropriately on *Thompson v. Madison County Board of Education,* 476 F.2d 676 (5th Cir. 1973), *London v. East Feliciana Parish Police Jury,* 476 F.2d 637 (5th Cir.1978). In *Thompson* the court considered whether a district court was correct in relying only on the evidentiary record established in the administrative proceeding it was reviewing, and concluded that due process required the district court to determine the facts for itself. 476 F.2d at 678. In *London,* the court held that a district court reviewing a school board apportionment plan had improperly based its holdings only on depositions submitted by the parties. 476 F.2d at 638.

The co-defendants' argument that their right to due process will be violated if they are not able to draw present Manville officers, directors and employees into the asbestos-related lawsuits they now face without Manville is just another version of their argument that they should not have to defend claims against them without Manville. This, in turn, is nothing more than an attempt to assert that Manville and/or its officers, directors and employees are indispensable parties, a plea which, if it has any merit at all, should be made by the co-defendants in the individual courts in which the actions are pending. *See* this Court's holding and the authority cited therein in the accompanying decision on the co-defendants' stay extension proceeding; *Rupp v. Cloud Nine, Ltd.,* 3 B.R. 202, 203 (Bkrtcy.D.New Mexico 1980).

decision denying an extension of the automatic stay to cover the co-defendants. The slightly differing results in these two proceedings are not inconsistent, but rather are fully warranted because of the narrow confines of the law regarding the intended beneficiary of the Section 362 automatic stay. As this court fully describes in its decision in the co-defendants' stay extension proceeding, some of the goals of the co-defendants in seeking such extension are commendable, but not supportable based on the limited scope of Section 362. Indeed, this Court finds the goal of removing all obstacles to plan formulation eminently praiseworthy and supports every lawful effort to foster this goal while protecting the due process rights of all constituencies.

In granting a measure of relief to Manville's employees, *et al.,* it should be noted that the line of authority supportive of a stay umbrella over key kindred personnel and affiliates of a financially importuned debtor is not so robust as to be fully applicable to Manville. While such extended stay relief might be appropriate to the tensions of a more traditional Chapter 11 reorganization, the dynamics of the Manville proceeding do not support more than the limited relief to be granted herein. Manville is currently a self-professed financially sound efficient enterprise with vast resources. The focus of its financial difficulties is upon the alleged potential two billion dollar liability to asbestos health victims. The stay of that litigation in the main remains under the umbrella of the 362 automatic stay. That Manville is otherwise inconvenienced is not sufficient to warrant the full measure of relief requested by it.[4]

B. *Manville's Application to Extend the Stay to Cover the Herrman Litigation*

■ With regard to the fourth cause of action in Manville's Amended Complaint, Manville's motion for a preliminary injunction is granted and the automatic stay may be extended to enjoin the Herrmans from pursuing their causes of action in *Herrman v. Beauchemin, et al.,* Civ. Action No. 82–M–1488 (D.Colo.1980) against the directors of Manville.

The Herrman litigation must be enjoined at this time because its true object is the debtor itself. Included among the approximately 17,000 lawsuits against Manville stayed by virtue of its Chapter 11 filing was *Abrams v. Johns-Manville Corp.,* 79 Civ. 2375 (S.D.N.Y. May 4, 1979). By means of an as yet uncertified class action brought two weeks after the bankruptcy petitions were filed and the stay became effective, Jeffrey Herrman and Linda J. Herrman instituted a lawsuit against certain officers and directors of Manville. In this purported class action, too, the plaintiffs allege that Manville's public disclosures misstated its potential litigation costs in violation of the federal securities laws. The Colorado suit for all practical purposes is a replay of the enjoined New York suit.

Manville has demonstrated that the requirements for applying Section 105 of the Code to extend the parameters of the Section 362 stay have been fulfilled here. This is because a stay of the Herrman litigation is both "necessary and appropriate" in order to carry out the purpose of Section 362, debtor protection. *See* discussion of authorities regarding Section 105 *supra* at pp. 425–427. This Court finds that the Herrman suit is nothing more than an effort to circumvent Section 362 by suing Manville's officers and directors when the real party in interest is Manville. In all but formal detail, the Herrman litigation is against the debtor within the meaning of Section 362. *See* the Herrman Complaint ¶¶ 7, 32 and 45, annexed as Exhibit 2 to the Von Wald Affidavit, which demonstrates that the relief sought is directed against the debtor itself. In these complaint paragraphs it is alleged that Manville, not the individual defendants, benefited from alleged misstatements causing the company's stock to sell at inflated prices.

---

4. In so ruling, this Court has examined the criteria for the determination of a summary judgment motion within Rule 56 of the Federal Rules of Civil Procedure ("FRCP") as applied in bankruptcy matters by Bankruptcy Rule 756. I find that there exist no material issues of fact precluding my disposing of this issue as a matter of law.

An adverse judgment in the *Herrman* case would have serious consequences for the debtors' estate. Manville's By-Laws require it to indemnify its officers and directors for their litigation expenses, including any amounts paid to satisfy a judgment of liability, so long as the conduct at issue was intended to benefit the company. *See* Von Wald Affidavit ¶ 9. Although Manville believes that the insurance policies which it has in force cover these expenses, the insurance company has reserved its right to contest coverage and to terminate on 30 days notice the payment of defense costs. If the insurance company fails to live up to its obligations, the officers and directors would look to the Company for reimbursement pursuant to the By-Laws. In any event, the policies have specific dollar limits beyond which Manville itself must pay. To the extent expenditures related to the *Herrman* suit exhaust those limits, an asset of the estate is diminished and Manville's exposure in other litigations increases. *See* Von Wald Affidavit, ¶ 10.

Moreover, there is a risk that Manville would be found to be a controlling nonparty in the *Herrman* action. It thus could be collaterally estopped in subsequent suits from relitigating issues determined against its officers and directors. Even if it is not so bound, Manville may be disadvantaged in subsequent suits. The deposition or trial testimony of its senior executives may be used against the ·Company in such actions. Yet Manville will not have the benefit of the most fundamental protections available to a party defendant, such as the right of cross-examination.

Manville faces more immediate burdens as well. On November 17, 1982, the plaintiffs in the *Herrman* action served interrogatories and document requests. Although ostensibly addressed to the individual defendants, the interrogatories seek to impute to the officers and directors any knowledge or conduct of companies by which they are employed, *i.e.,* Manville. (Interrogatories ¶ D annexed as Exhibit 3 to the Von Wald Affidavit). Further, the interrogatories and document requests seek information and internal documents of Manville which relate solely to the Company's affairs. For example, the Herrmans demand all documents and information regarding Manville's organizational structure, and its relationship with its auditors. (Interrogatories, ¶¶ 14, 17, 18; Document Request, ¶¶ 1–3 annexed to the Von Wald Affidavit as Exhibit 4.) They also seek Manville's internal financial reports, insurance policies, legal files, and research reports. (Interrogatories, ¶¶ 19(a), 24, 30, 38; Document Request, ¶¶ 1–3). *See* Von Wald Affidavit ¶ 6.

If the individual defendants were required to respond fully to these discovery demands, Manville would have to divert personnel from its financial, legal, and insurance departments, as well as secretaries, paralegals, clerks, and others. *See* Von Wald Affidavit ¶ 7. Moreover, all of the directors, including the Chairman of Manville's Board, would have to invest substantial time in fashioning their responses, particularly to those interrogatories dealing with their background and knowledge and to those document requests seeking information from their files. Manville expects that the plaintiffs will seek further discovery, including depositions of the individual defendants and other Manville personnel. Indeed, apparently as a prelude to additional discovery, the interrogatories require the defendants to identify the managing agents, officers, and directors of all Manville subsidiaries, divisions or affiliates, all outside auditors, all Manville personnel who participated in audits or other internal accounting activities, and all persons present at discussions concerning litigation costs. (Interrogatories ¶¶ 16, 17, 18(b), 25(c), 38(b). These burdens are compounded many fold by the hundreds of other litigations pending against Manville's officers, directors, employees, insurers, and other agents. In these litigations, too—in many of which Manville's Chairman is a named defendant—the Company confronts extensive and burdensome discovery demands. *See* Von Wald Affidavit ¶ 7.

Manville faces more pressing obligations in the bankruptcy proceedings which have commanded and will continue to command

the attention of its officers, directors, counsel, financial analysts, and administrative personnel. A number of Manville personnel, mostly members of management, have been summoned for examination pursuant to Bankruptcy Rule 205, and the Company has received a number of document requests from official creditor's committees. Further, to fulfill its responsibilities in this proceeding, Manville must conduct financial analyses, prepare numerous schedules, and generate many other filings. Manville's Chairman, in particular, has found it necessary to devote substantial time to the reorganization. Responding to discovery and mounting a defense in the *Herrman* suit will draw him and other Manville personnel away from these responsibilities, as well as from the important and time-consuming tasks involved in running a multibillion dollar, diversified corporate enterprise. *See* Von Wald Affidavit ¶ 8.

Furthermore, because much of the discovery the Herrmans seek is in essence directed against Manville, the privileges which apply to any of the materials requested are Manville's. Thus, Manville may be forced to intercede in pretrial discovery to protect its interests. Also, as in *Wickes, supra,* the statements of the employees the Herrmans seek to depose may be taken as corporate policy and the company could possibly be collaterally estopped in subsequent suits from relitigating the issues determined in the *Herrman* litigation.[5]

The facts set forth above establish that the continuation of the *Herrman* litigation threatens adversely to impact on property of the debtor's estate as well as disrupt the reorganization proceedings and frustrate Manville's efforts to achieve financial rehabilitation. This Court will therefore exercise its power pursuant to Sections 362 and 105 to thwart that threat. *See* discussions of *Wickes, supra* at pp. 22–23; *see also First Financial Group of Texas, supra; Federal Life Insurance, supra; Equity Funding Corp., supra.*

In addition, the criteria for issuing a preliminary injunction in this circuit have been met here. *See Sonesta International Hotels Corp. v. Wellington Assoc.,* 483 F.2d 247 (2d Cir.1973), where the Court held that such relief should be granted upon a showing of either

"(1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Id.* at 250. (Emphasis in original) (citations omitted).

*Accord, Selchow & Righter Co. v. McGraw-Hill Book Co.,* 580 F.2d 25, 27 (2d Cir.1978). There is a strong preliminary showing that Manville's application for a stay probably will succeed on the merits and that without such a stay, Manville will suffer irreparable injury.

The Herrmans, on the other hand, have made no showing that they would be prejudiced by a stay pending the completion of these proceedings. The delay Manville seeks will not diminish the potential liability at issue or in any way complicate the Herrman's evidentiary burdens. Indeed, the *Abrams* suit, which predates the *Herrman* action and covers for the most part an

---

**5.** Moreover, although the Herrmans allege that this Court has no jurisdiction over this suit under 28 U.S.C. Section 1471(b), because it is not arising under or related to "a case under title 11", this is clearly unsupportable. Manville's claim here is made under Section 105 and 362 of Title 11. It logically follows that Manville has met the jurisdictional prerequisites of Section 1471(b) which require that the suit either arise under or be related to a Chapter 11 case. Also, the legislative history indicates, that the phrase "arising under" empowers "the bankruptcy court to hear any matter under which a claim is made under a provision of title 11." S.Rep. No. 989, 95th Cong., 2d Sess. 154 (1978), U.S.Code Cong. & Admin. News 1978, p. 5940. *See* 1 Collier on Bankruptcy, ¶ 3.01 (15th ed. 1982).

Moreover, the authority of this Court to determine the automatic stay issues presented herein in light of *Northern Pipeline v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) is set forth in Rule d(3)(A) of Emergency Bankruptcy Rule I adopted by the United States District Court for the Southern District of New York, which is the adopted local counterpart of a suggested rule of the Judicial Conference.

earlier period, was stayed automatically by the filing of the bankruptcy petition. Yet the plaintiff class in that litigation, of which the Herrmans purport to be members, have not requested relief from the stay or made any claim of undue prejudice. Indeed prejudice to the Herrmans, if any, is sharply diminished by the parallel Rule 205 discovery ongoing and available to the Herrmans. Furthermore, there is nothing that precluded the commencement of this litigation prior to the commencement of the Chapter 11 case.

Accordingly, this Court hereby orders a preliminary injunction of the *Herrman* litigation. The Herrmans motion for summary judgment is for these same reasons denied in its entirety.

C. *Manville's Application to Extend the Stay to Cover Insurers and Sureties*

In contrast, the automatic stay may not be extended to protect Manville's insurers and sureties from suits by the defendants. As detailed above, the automatic stay may only function to protect the debtor's estate from suits that would have an adverse financial impact on it. Moreover, because a stay extension request is deemed a request for a preliminary injunction, *see In re Larmar Estates, Inc., supra,* a showing of irreparable harm is required to extend the stay pursuant to Section 105 of the Code. *See In re Otero Mills,* 21 B.R. 777, 778–79 (Bkrtcy.D.N.M.1982); *In re Landmark Air Fund, supra; In re Varisco,* 16 B.R. 634, 636 (Bkrtcy.M.D.Fla.1981); *In re Burke,* 5 B.R. 368 (Bkrtcy.E.D.Pa.1980).

In the instant proceeding, Manville has failed adequately to demonstrate that it will be irreparably injured if all third party suits against its insurers and sureties, entities totally independent from Manville, proceed. Unlike suits against the debtor's employees and agents, Manville maintains no obligation to indemnify or pay for the defense costs of its insurers or sureties. Thus, the liability of these insurers and sureties in no way inures to the detriment of the Manville estate. Accordingly, these insurers

and sureties belong in the same category as Manville's co-defendants. Although this Court does perceive a value to enlarging the breathing spell to cover these entities in fostering plan formulation, this Court recognizes that the interests of these insurers and sureties are not sufficiently interwoven with those of the debtor to comport with the narrow scope of Section 362 of the Code. The suits against Manville's insurers and sureties have not been shown to be "end run" tactics to obfuscate the purported real target of these third party suits, Manville.

In addition to its inadequate showing of irreparable harm if the relief it seeks is denied, Manville has failed to demonstrate that the defendants herein, the third parties who are suing the insurers and sureties, will suffer no or minimal harm if the stay is extended to bar these suits. *See In re Otero Mills, Inc.,* 21 B.R. 777, 778–779 (Bkrtcy.N.M.1982). Manville has not even fulfilled the lower standard enunciated by the court in *In re Varisco,* 16 B.R. 634, 636 (Bkrtcy.M.D.Fla.1981), of showing that the harm that it may suffer in the absence of an injunction outweighs the effect of an injunction on other parties. The memoranda and affidavits filed with the Court are devoid of any substantial discussion of the minimal harm that would be suffered by other parties if they were not able to proceed with pending independent actions against the insurers and sureties.

On the contrary, Keene and the other defendants, including the Asbestos Litigation Group have made a substantial showing of the harm that they will suffer in inordinate delay and frustration of litigation if they are precluded from proceeding against these wholly independent entities. *See e.g.,* Affidavit of Arthur S. Olick sworn to December 7, 1982; Affidavit of Robert Rosenberg, sworn to December 20, 1982.

Accordingly, Keene's motion for partial summary judgment dismissing the third cause of action of Manville's Amended Complaint is hereby granted [6] and Manville's request to extend the stay to encom-

**6.** *See* footnote 4 *infra.*

pass suits brought by these defendants against its insurers and sureties is therefore denied. Thus, there is no impediment to allowing the appeals in the *Hansen* and *Janssens* cases to go forward. The judgment holders in those cases are seeking monetary relief not against Manville but rather against Federal Insurance Company ("Federal"), the surety who furnished the supersedeas bonds on behalf of Manville.

In the *Hansen* case, plaintiff Beatrice Mae Hansen commenced an adversary proceeding in this Court to gain relief from the Section 362 automatic stay to authorize Johns-Manville Sales Corporation to prosecute its appeal now pending in the United States Court of Appeals for the Fifth Circuit. Hansen holds a judgment against the debtor from the District Court in the Southern District of Texas, Galveston Division, in an asbestos exposure case.

Manville filed a notice of appeal from this judgment on July 6, 1982, before it filed its petition in Chapter 11, and a stay of execution was procured by the filing of a supersedeas bond.

By the terms of the bond, Federal bound itself to pay Hansen the amount of the judgment in full, together with all costs, interest and damages for delay if for any reason the appeal was dismissed or the judgment affirmed. By the filing of the bond, approved by order of the District Court, the judgment was superseded and execution thereof was stayed pending appeal.

Similarly, the *Janssens* case involves a Manville appeal from a substantial compensatory and punitive damages award based on asbestos exposure by jury verdict in the Circuit Court of Duval County, Florida, to Edward J. Janssens and Patsy A. Janssens. The procedural posture of this case was slightly different from that of the *Hansen* case in that the parties obtained a decision from the Florida District Court of Appeals that Manville's appeal is not stayed by virtue of Section 362(a) of the Code. In so doing, the Florida Court noted that the Sixth Circuit in an appeal pending prepetition had affirmed a substantial judgment including punitive damages against Johns-Manville Sales Corporation two full months after Manville filed for reorganization. *See Moran v. Johns-Manville Sales Corp.,* 691 F.2d 811 (6th Cir.1982).

Manville then obtained a temporary restraining order *ex parte* before the District Court for the Southern District of New York enjoining prosecution of this appeal in Florida. At a hearing held on December 17, 1982, Judge Sprizzo of the District Court, Southern District of New York, left open to the parties the option of moving in this court for stay relief with respect to the Janssens. Manville then made the instant motion for enforcement of the Section 362 stay. At a hearing held before this court on December 28, 1982, I ruled under Bankruptcy Rule 914 that the motion be treated as an adversary proceeding to modify the stay for cause pursuant to Section 362(d) of the Code.

Both Hansen and the Janssens have demonstrated that cause exists to modify the stay pursuant to Section 362(d) of the Code to require the debtor to prosecute the appeal as well as any appeals therefrom. Where a plaintiff seeks modification of the automatic stay imposed by 11 U.S.C. § 362 solely to establish the liability of the debtor to permit the plaintiff to proceed against a surety, insurer, or other third party, cause exists for granting this relief. *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982); *Mid-Jersey National Bank v. Fidelity Mortgage Investors,* 518 F.2d 640 (3d Cir.1975); *In re General Steel Tank Co.,* 478 F.2d 294 (4th Cir.1973); *In re Adolf Gobel, Inc.,* 89 F.2d 171, 172 (2d Cir.1937); *Brown v. Four-In-One Coal Co.,* 286 F. 512 (5th Cir.1923); *In re Traffic Safety Co.,* 10 B.R. 751 (Bkrtcy.E. D.Pa.1981); *In re Honosky,* 6 B.R. 667 (Bkrtcy.W.D.Va.1980). *See Foust v. Munson Steamship Lines,* 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936) (modification allowed to establish debtors' liability although insurance policy had deductible creating liability of debtor not covered by insurer); *In re McGraw,* 18 B.R. 140 (Bkrtcy.W.D.Wis.1982) (modification granted to establish debtor's liability and allow creditor's satisfaction of

judgment against debtor's employer on theory of *respondeat superior*). *See generally,* 2 Collier on Bankruptcy ¶ 362.07 at 362–51 (15th ed. 1982).

The facts in *Mid-Jersey,* 518 F.2d 640, are particularly similar to those in the instant case. There, a plaintiff sought to lift the automatic stay to allow the pursuance of an appeal where execution on judgment had been stayed by virtue of the debtor's making a deposit in court in lieu of a supersedeas. In *Mid-Jersey,* the Third Circuit held that the stay did not apply because the deposit was not property of the debtor over which the court had jurisdiction.

Furthermore, Congress has recognized a value in lifting the stay to allow actions to proceed in some instances:

[I]t will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum. . . . S.Rep.No. 989, 95th Cong. 2d Sess. 50 (1978, U.S.Code Cong. & Admin. News 1978, p. 5836; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977)).

Consequently, courts have allowed modification of the Section 362 stay and its predecessor under the Bankruptcy Act where no great prejudice to either the estate or the debtor would result and where the hardship to the plaintiff caused by the continuance of the stay outweighs the hardship to the debtor caused by stay modification. *See, e.g., Foust,* 299 U.S. at 84, 87, 57 S.Ct. at 94, 95; *Holtkamp,* 669 F.2d at 508–09; *Honosky,* 6 B.R. at 669; *McGraw,* 18 B.R. at 142.

In the instant *Hansen* and *Janssens* cases, plaintiffs will be totally precluded from recovery against the surety if the debtor is not a party to the appeal, while the debtor's sole injury will be the costs attendant to pursuing the appeal. These potential litigation costs do not rise to the level of "great prejudice". *See e.g., McGraw,* 18 B.R. at 142.

The debtor further argues that this Court must deny these plaintiffs relief from the automatic stay because their claims based upon judgments awarding both compensatory and punitive damages could be converted by a surety into ones for contractual indemnification. Manville asserts that it is unfair for it to have to pay a surety for both compensatory and punitive damages when, pursuant to the Code, it may subordinate punitive damages claims. *See* 11 U.S.C. 726.

However, this possibly inequitable result does not pertain to the criteria for lifting the automatic stay herein. Manville must bear the risk of this inequity as a risk of having filed in Chapter 11 after posting supersedeas bonds pending appeal. The issue as to whether the surety's potential claim is contractual or partially subordinate as punitive is not presently before the Court. Appellee plaintiffs' risks were eliminated when the debtor procured these bonds. The bonds served to protect these plaintiffs from the debtor's failure to pay these judgments for any reason, including bankruptcy. *See In re Fintel,* 10 B.R. 50, 52 (Bkrtcy.D.Or.1981).

Moreover, the debtor's argument that the stay should not be lifted to allow this appeal to go forward because it would represent an adverse precedent should the judgment be affirmed is also specious. The precedent has already been set because the judgment is final, despite the existence of an appeal therefrom. *See Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 189, 61 S.Ct. 513, 515, 85 L.Ed. 725 (1941). It thus appears that only if the debtor does prosecute this appeal can it avoid this res judicata and collateral estoppel effects of this judgment.

Accordingly, the automatic stay is hereby modified to allow plaintiffs Hansen and Janssens to authorize the debtor to prosecute the above-described appeals and any appeals therefrom.

CONCLUSION

Based upon the foregoing, it is the holding of this court that:

(1) With regard to the first and second causes of action in Manville's amended complaint for declaratory relief, Keene's motion

for partial summary judgment is denied to the extent that all suits and discovery requests pursued against certain officers, directors, employees and agents who are themselves named parties in litigation and who are vital to plan formulation and reorganization are temporarily stayed until March 1, 1983. Likewise, the discovery requests directed to the same protected parties, if named in the complaints by Occidental and Lake Asbestos are covered by this limited stay. Those officers, directors, employees or agents who are essential to plan formation and related reorganization duties, and who are to be protected by the limited stay to March 1, 1983, shall not exceed 25 in number and shall be designated by Manville in the order to be settled herein. With respect to that branch of the relief sought by various parties for a modification of the automatic stay to pursue discovery against Manville's nonparty employees and agents, the requests are denied. In addition, all discovery requests directed against former Manville employees and those present employees sued individually and not included in the twenty-five key employees delineated above may be pursued.

(2) With regard to the third cause of action in Manville's amended complaint, Keene's motion for partial summary judgment is granted and all suits against Manville's insurers and sureties shall not be stayed and may continue unabated. Accordingly, the appeals in the *Hansen* and *Janssen* cases may proceed as neither of these appeals affect property of the Manville estate in that these plaintiffs can pursue relief through the posted supersedeas bonds.

(3) Regarding the fourth cause of action in Manville's amended complaint, Manville's motion for a preliminary injunction is granted enjoining Linda and Jeffrey Herrman from pursuing their shareholders' class action against the officers and directors of Manville. The Herrmans' motion for summary judgment dismissing this fourth cause of action is denied.

Settle an order in conformity with this opinion within five days.

## ON REHEARING

Johns-Manville Corporation, debtor and debtor-in-possession for and on behalf of itself and the other debtors and debtors-in-possession herein (collectively "Manville"), having moved this Court by application dated January 14, 1983 supported by the affidavits of Stephen N. Goldberg and Dennis H. Markusson sworn to January 14, 1983 (the application and affidavits being herein collectively referred to as the "Application") for an order directing the other parties to this adversary proceeding to show cause why an order should not be entered (a) granting Manville's request for reargument and rehearing of those issues described in the Application concerning this Court's "Decision No. 2 in Related Automatic Stay Matters" ("Decision No. 2"); (b) permitting Manville immediate reargument of those matters contained in Decision No. 2 as requested and described in the Application; and (c) granting Manville such other and further relief as may be just and proper, and a hearing on the Application having been held before me on January 21, 1983, and upon reading and filing the Application, the order to show cause dated January 14, 1983 (the "Order") and the affidavit of service thereof reflecting compliance with the notice requirements of the Order, and upon the record and minutes taken before me * and after due deliberation and sufficient cause appearing therefor, it is

NOW, on motion of LEVIN & WEINTRAUB & CRAMES and DAVIS POLK & WARDWELL, attorneys for Manville,

ORDERED, that Manville's request for reargument and rehearing of those issues

---

\* and it appearing that in its initial papers on the issue of whether the Section 362 stay functions to protect Manville from direct suits against insurers, Manville failed adequately to show the critical distinctions between the cases on appeal involving supersedeas bonds, on the one hand, and cases at the trial court level involving direct suits by aggrieved plaintiffs against Manville's insurers in those states which permit such direct suits, on the other, and indeed, none of the earlier papers before the Court focused on that distinction.

described in the Application concerning Decision No. 2 is hereby granted in all respects, and after allowing said rehearing and considering said reargument, the Court hereby modifies its Decision No. 2 to the following extent:

## FINDINGS OF FACT

1. In certain states third party claimants are permitted to institute direct actions against insurance carriers which result in an adjudication of both the third party claimant's claim against the insured and the insured's claim against the insurer.

2. Prior to the filing of Manville's petitions under chapter 11 of the Bankruptcy Code (the "Code") 179 such direct action cases were pending against Manville's insurers, including general liability insurers, in which asbestos-related health claimants alleged damages aggregating in excess of $216 million (Markusson affidavit pp. 2 and 3). These direct action suits are premised on the same type of asbestos-related health injuries claimed by all of the approximately 15,500 plaintiffs whose suits against Manville were automatically stayed under Section 362 of the Bankruptcy Code.

3. If third party direct action asbestos-related health suits are allowed to proceed, it is reasonable to expect additional direct actions to be instituted against Manville's insurers, including general liability insurers.

4. Although Manville itself is no longer a party to the direct actions by reason of the automatic stay of Section 362 of the Bankruptcy Code, its assets could be adversely affected by the continuation of such suits. The insurance policies and proceeds thereof and the causes of action previously asserted by Manville against its insurance carriers in suits pending in California ("California Insurance Litigation") and elsewhere constitute substantial property of the Manville estate which will be diminished if and to the extent that third party direct actions against the insurance carriers result in plaintiffs' judgments.

5. If the third direct actions against the insurance carriers are permitted to continue the same evidence, witnesses, documents and legal theories relevant to the asbestos health claims asserted against Manville will be at issue. Moreover, since decisions could affect Manville's position in the California Insurance Litigation and its other asserted claims against its insurance carriers, Manville will have no option but to vigorously participate in all such third party direct actions to protect its own interest and to discharge its obligation to cooperate with its insurers in the defense of such actions.

6. In Decision No. 2 the Court, in two (2) specific instances, indicated that it will modify the automatic stay of Section 362 to permit the continuation of appeals in those instances where a supersedeas bond has been posted by Manville since Manville does not have a property interest in the supersedeas bonds. By contrast, successful third party claimants in direct actions against Manville's insurance carriers would receive payment from funds which would otherwise be available, for the most part, to the Manville estate.

7. If the third party direct actions against Manville's insurance carriers are permitted to continue, important issues respecting policy coverage and liability may be pressed as collaterally estopping Manville. For example, the critical coverage issue will inevitably be litigated and determined in the third party direct actions where each insurer will take a position that minimizes its liability. Additionally, some insurers will disclaim any liability to Manville as a result of Manville's alleged failure to disclose information concerning the risks of exposure to asbestos.

8. Resolution by one forum, preferably this Court, of the many issues relating to Manville's insurance coverage and the liability of its insurance carriers, including those issues raised in the California Insurance Litigation, will be in the best interest of all parties in the reorganization proceedings and will minimize the expenses of litigation. Fragmenting these relevant issues by permitting various forums to decide the issues will frustrate prompt and effective formulation of a plan of reorganization be-

cause of uncertainties with respect to the dimension of the insurance carriers' liability to Manville.

9. Staying third party direct actions against Manville's insurance carriers will insure uniform treatment of all asbestos-related health claimants. There is no compelling reason to permit the third party direct actions against Manville's insurance carriers to continue, notwithstanding provisions in the laws of four states that permit such actions.

10. With respect to the direct actions and any additional ones which may be commenced, it is also clear that Manville will find it necessary to participate in all such actions to minimize adverse rulings and to protect what may be the most important single asset of its estate, to wit, its claims under its insurance policies. To permit the third party actions to continue against Manville's insurance carriers will result in a multiplicity of positions and defenses on the part of the insurance carriers and will most likely result in inconsistent decisions and rulings concerning the coverage and liability of the insurance carriers to the third party claimants and to Manville. Such a disorganized and fragmented procedure for resolving such major issues will undermine Manville's attempt at reorganization.

## CONCLUSIONS OF LAW

1. Manville's rights under its insurance policies and all the causes of action arising thereunder constitute property of the Manville estates within the purview of Section 541(a) of the Code. The scope of Section 541(a) is broad and all encompassing. See *Collier on Bankruptcy* Section 541.06 (15th Ed.). See also, *In re Moskowitz*, 14 B.R. 677, 5 CBC 2d 269 (Bkrtcy.S.D.N.Y.1981) and *In re Smith*, 640 F.2d 888 (7th Cir.1981).

2. The legislative history of Section 362 indicates that the automatic stay protects creditors from the injustice of a race for the debtor's assets:

> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property.

Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. See H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 340 (1978), U.S.Code Cong. & Admin.News, pp. 5785, 6297.

3. Pursuant to Section 362(a) of the Code, all persons and entities are stayed and enjoined from commencing or continuing any proceeding or action to obtain possession of or interfere with property of Manville's estates or property from Manville's estates and, accordingly, are stayed and enjoined from commencing or continuing any proceeding against Manville's insurers based on the alleged liability of Manville, its affiliates, officers, directors or employees, except with respect to supersedeas bonds such as those involved in the *Hansen* or *Janssens* cases, which are not property of Manville's estates, or as may otherwise be allowed by this Court.

4. Pursuant to § 105(a), the Bankruptcy Court may extend the automatic stay under § 362 of the Code to stay and enjoin proceedings or acts against non-debtors where such actions would interfere with, deplete or adversely affect property of Manville's estates or which would frustrate the statutory scheme of chapter 11 or diminish Manville's ability to formulate a plan of reorganization:

> "The exceptions to the automatic stay of § 362(a) which are set forth in § 362(b) are simply exceptions to the stay which protect the estate automatically at the commencement of the case and are not limitations upon the jurisdiction of the bankruptcy court or upon its power to enjoin. That power is generally based upon § 105 of the Code. The court will have ample power to enjoin actions excepted from the automatic stay which might interfere in the rehabilitative process whether in a liquidation or in a reorganization case." 2 *Collier on Bankruptcy* § 362.02 (15th Ed.).

5. It is in the interests of economy, efficiency and protecting against the possibility of inconsistent interpretations of Manville's insurance coverage to avoid a multiplicity of actions concerning such insurance coverage. *Cf. American Motorists Insurance Co. v. Philip Carey Corp.,* 482 F.Supp. 711 (S.D. N.Y.1980) (Weinfeld, J.).